SIMON STETTHEIMER, Respondent, *v.* THEOBALD W. TONE et al., Impleaded, etc., Appellants.

Defendants were copartners doing business as private bankers. All capital was furnished by S., the other members contributing simply their services. S. was advised by his partners that the firm was about to suspend. He had at the time to his credit in a private account with the firm over $10,000, consisting of deposits made independent of his capital account. S. drew his individual check on his private account which he delivered to plaintiff with directions to pay therewith certain debts of his. All the other partners had knowledge of the check and its purpose, and it was agreed that it should be paid out of the cash items then in hand, and the check was charged to the said individual account. On presenta-tion of the check one of the partners offered to pay the amount in cur-rency, but at plaintiff's request a draft was given instead, drawn by the firm upon a New York bank, which was not paid. In an action upon the draft the defendants, other than S., defended on the ground that plaintiff had no title to the draft, but that S. was, in fact, the owner and that the latter could not in his own name, or in that of another, maintain an action against himself and copartners as makers of the draft. *Held*, untenable; that so far as his deposit account was concerned S. stood in the same position toward the firm, as between the copartners, as that of any other depositor, and could have enforced his right to draw out the fund in an action brought directly against his partners; and that he could transfer this right, and having so done, it was no concern of his partners, and they were not entitled to inquire as to whether the transfer was with or without consideration; also, that, as the rights of creditors were not involved, the fact that the firm had failed did not affect defendants' liability.

(Argued May 1, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order

made the first Tuesday of June, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and denied a motion for a new trial.

This action was upon a draft drawn by the firm of Stettheimer, Tone & Co., of which firm defendants were the members, private bankers, for $10,000, payable to plaintiff.

The facts are sufficiently stated in the opinion.

*Theodore Bacon* for appellants.    Remedies at law are forbidden between partners, they must resort to equity for a determination of their respective rights upon an accounting. (*Mainwaring* v. *Newman*, 2 B. & P. 120; *Bosanquet* v. *Wray*, 6 Taunt. [1 E. C. L. R.] 597; *Robson* v. *Curtis*, 1 Stark. [2 E. C. L. R.] 78; *Eastman* v. *Wright*, 6 Pick. 316; *Casey* y. *Brush*, 2 Cai. 293; *Arnold* v. *Arnold*, 90 N. Y. 580; *Burley* v. *Harris*, 8 N. H. 243; *Learned* v. *Ayres*, 41 Mich. 677; Story on Part. § 221; Collyer on Part. §§ 643, 902; Lindley on Part. 739–744.) Where all the partners become bankrupt, the general rule is that the separate estate of one partner shall not claim against the joint estate of the partnership in competition with the joint creditors, nor the joint estate against the separate estate in competition with the separate creditor.    (Collyer on Part. [4th Am. ed.] § 990; *In re Rieser*, 19 Hun, 202; *Ransom* v. *Vanderventer*, 41 Barb. 307, 316; *Wilson* v. *Robertson*, 21 N. Y. 587; *Menagh* v. *Whitwell*, 52 id. 146, 162; *Crook* v. *Rindskopf*, 34 Hun, 457.) Neither Sigmund Stettheimer nor this plaintiff, who stands in his shoes, can maintain an action upon the draft any more than for money lent.    (*Nat. Bk. of Champlain* v. *Wood*, 45 Hun, 411, 414, 415; *Davis* v. *Merrill*, 51 Mich. 480.) The court erred in charging the jury that their " verdict does not affect the rights of any creditors of the firm," and afterwards that " the creditors have a remedy over in another way." (Broom's Legal Maxims, 571–583; Story on Part. §§ 131, 132, 163; Collyer on Part. § 575; *Adams* v. *Barnes*, 17 Mass. 365; *Calkins* v. *Allerton*, 3 Barb. 171; *Voorhees* v. *Seymour*, 26 id. 569, 583, 584; *Candee* v. *Lord*, 2 Comst. 269, 274–276.)

*James Breck Perkins* for ·respondent. The deposit was a cause, of action distinct from the partnership accounts, and an action upon it could have been maintained by Sigmund Stettheimer himself. (*Howard* v. *France*, 43 N. Y. 593.) Although, ordinarily, one partner cannot sue his copartner at law in respect to his partnership dealings, if the cause of action is distinct from the partnership accounts and does not involve their consideration, the action may be maintained. (*Crater* v. *Bininger*, 45 N. Y. 545 ; Parsons on Partnership, § 273.) This money belonged in equity to Sigmund Stettheimer's creditors, and he transferred the account to Simon and directed him to take the money, ·pay the $8,015.56 to his brother, and the balance to other creditors. He also gave him a check for the amount. This was enough to be a good transfer. (*Gray* v. *Barton*, 55 N. Y. 68, 72 ; *Taylor* v. *Kelly*, 5 Hun, 115 ; *Westerlo* v. *Dewitt*, 36 N. Y. 340.) Certain particular and distinct transactions may be separated from the affairs or business of the partnership by the agreement of the parties. (*Collamer* v. *Foster*, 26 Vt. 754 ; *Gibson* v. *Moore*, 6 N. H. 547 ; Story on Partnership, 273 ; *Jackson* v. *Stopherd*, 2 C. & W. Exch. 361, 366 ; *Howard* v. *Francis*, 43 N. Y. 593 · *Arnold* v. *Arnold*, 90 id. 580, 584.)

PARKER, J. The defendants, for some time prior to Febuary 13, 1879, were copartners doing business as bankers. The entire capital, $50,000, was furnished by Sigmund Stettheimer, while the other members of the firm contributed their energies and skill to the business. The adventure resulted in a general assignment for the benefit of creditors on the day mentioned.

In October, 1878, Sigmund Stettheimer deposited, of his private funds, $8,015.56 in the Importers and Traders' Bank of New York, with the intent to transmit such amount to his brother in Frankfort, Germany, in payment of his indebtedness to him, as soon as he should be advised by his brother of the manner in which he desired the transmissions to be made. One of the defendants, Tone, who appears to have had charge of the general management of the business, solicited Stett-

heimer to deposit the money with the firm until he should receive the direction from his brother, for which he was waiting, and then he would send it to him. Stettheimer consented, and on November 11, 1878, the account was transferred from the Importers and Traders' Bank to that of the defend-. ants, and the amount credited to Stettheimer on his pass-book and private account with the defendants. On the evening of February 12, 1879, he was informed by his partners that the firm was about to suspend. At that time he had to his credit in his private account, which was entirely distinct from his capital account, a little over $10,000. It consisted of deposits made from time to time, and the amount transferred from the Importers and Traders' Bank. During the evening Sigmund Stettheimer drew his individual check on his private account, payable to the order of the plaintiff, and delivered it to him with directions to pay his brother the amount which he owed him, and also his other individual creditors.

The evidence tended to show that all of the partners had knowledge of this check and its purpose, and, in view of the existence of such testimony, the manner of its submission to the jury by the trial court, and the finding of the jury, it must be assumed that such fact was found. After the check was drawn it was agreed, in the presence of all the partners, that it should be paid out of the cash items then in hand, and the check charged up to the individual account of Sigmund Stettheimer. To accomplish the agreement of the parties the plaintiff went to the bank where all of the defendants, except Sigmund, who was old and infirm, were engaged in arranging the affairs of the bank preparatory to the making of a general assignment. He presented the check for payment, and one of the defendants, Tone, offered to pay the amount of the check in currency. Plaintiff for some reason stated that he preferred a draft on New York. The draft in suit was then drawn and delivered to him, and the check was taken by one of the partners and placed in a drawer where other checks of a like character were kept by the officers of the bank. Plaintiff at once indorsed and forwarded the draft

to his correspondent for collection, but owing to the failure of the bank the draft was not paid. Subsequently this action was commenced to recover on the draft. The defendants Stettheimer did not appear in the action and suffered a default. The defendants Tone appeared and answered, and upon the trial assigned as reasons for resisting a recovery that the plaintiff had not the title to the draft. That their co-defendant and late partner Sigmund Stettheimer was, in fact, the owner, and the plaintiff acted simply as his agent in bringing the suit; that Stettheimer cannot, in his own name or in that of another person, maintain an action against himself and partners as makers of the draft.

The defendants Tone do not appear to be in a position to question the title of the plaintiff. The money on deposit was never contributed to the capital account. It was Sigmund's individually, and it was so understood by every member of the firm. By the understanding and agreement of the partners, so far as this deposit was concerned, he occupied the same relation towards the firm (as between themselves) as that of any other depositor. So long as he was not in default, under the articles of the copartnership, he had the same right to draw out this fund as had the other depositors. A right which could have been enforced in an action brought directly against his partners. (*Crater* v. *Bininger*, 45 N. Y. 545.)

After the check had been drawn and delivered to the plaintiff, all of the parties being present, this right was fully recognized and acquiesced in, and it was agreed that the money should be paid. The check was handed in by the person to whom it was made payable, and payment thereof in cash actually tendered by one of the defendants Tone. Plaintiff preferred payment by draft, and one was drawn by the firm on New York and delivered to him. If, then, the plaintiff had the right to draw out the money, he also had the right to transfer it. Whether the transfer was with or without consideration was no concern of his partners. And having given the firm draft in payment of the check by which Sigmund

sought to transfer the funds, these defendants Tone cannot now, in an action against them and the other partners as drawers thereof, be permitted to inquire into the consideration moving between Sigmund and the plaintiff; and the fact that the firm has since failed does not affect the legal liability of the defendants thereon. The rights of the creditors of the partnership are not involved in this action. The assignee is not a party and attacking the transaction as fraudulent. The question presented is simply one of liability of the defendants on their draft, as between themselves and the plaintiff, the payee therein.

The excuse presented for the non-production of the letter written to Sigmund's brother was not sufficient to justify the court in receiving secondary evidence of its contents. Under our view of the case, however, the evidence could not possibly have affected the result. It does not, therefore, constitute such an error as justifies a reversal. The other rulings excepted to do not seem to require discussion.

The judgment appealed from should be affirmed.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.