ELLIOT C. BROWN, by CHARLES W. FLOYD, His Guardian ad Litem, Appellant, *v.* JOHN SPOHR et al., as Executors of JOSEPH H. BROWN, Deceased, et al., Respondents.

1. TRUST OF PERSONAL PROPERTY — ESSENTIAL ELEMENTS. There are four essential elements of a valid trust of personal property : 1, a designated beneficiary; 2, a designated trustee, who must not be the beneficiary; 3, a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; 4, the actual delivery of the fund or other property or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee.

2. SAME. The provisions of separate instruments alleged to be invalid trusts of personal property, together with circumstances occurring before and after their execution examined in a case where no rights of creditors intervened, and where the objection to their validity proceeded from the kindred of the trustor, and the questions considered: 1, as to whether identification failed because no trustee was in existence to whom the title to each fund could pass and because the amount of each fund was not so separated from a general fund that title thereto could pass; 2, as to whether there was a valid delivery of the *corpus* of the several trusts; 3, as to whether there was a legal consideration for partnership notes which constituted

the *corpus* of each trust; 4, as to whether the trustor having been a member of the partnership, the trustees could maintain an action upon the notes, and held, that valid trusts of personal property were thereby created and that the notes were enforcible by the trustees.

*Brown* v. *Spohr,* 87 App. Div. 522, affirmed.

(Argued October 12, 1904; decided December 30, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 3, 1903, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The action was brought to set aside nine deeds of trust made by Joseph H. Brown, and in the event of their being set aside, plaintiff asks for a judicial construction of the residuary clause of said Brown's will, determining whether the funds specified in the trusts passed under that clause of the will, or passed to the widow and next of kin as in case of intestacy.

For many years prior to his death, Joseph H. Brown had been a member of the firm of Brown, Draper & Co., dealers in tailors' trimmings in the city of New York. The firm was composed of Brown and one Draper, who died on the 6th day of December, 1896. After Draper's death, Brown continued the business under the old firm name until January 1st, 1901, when two employees named Frederick W. Roe and Wade H. Thompson were admitted to the firm, which was continued under the old name, with Brown in sole charge of its finances.

On the 22d day of December, 1893, which was three years prior to Draper's death, an account had been opened upon the books of Brown, Draper & Co., by a credit of $20,000, to Marion Smith, who was Brown's niece. This amount was transferred from the loan account of Brown against the firm for moneys advanced and profits credited, apart from Brown's contribution to the firm's capital, and which, concededly, exceeded the amount thus credited to Marion Smith. From time to time thereafter various sums were added to the Marion Smith account by way of interest and cash credits, and it was debited with various drafts made by Marion Smith,

so that on December 31st, 1896, the account was credited with the sum of $21,620.37.

On the last-mentioned date, which was twenty-five days after Draper's death, Brown drew a check in the name of Brown, Draper & Co. to the order of Marion Smith, which was debited to the latter's account. On the same day, and at the instance of Brown, Mr. Spohr, who was the firm's cashier, took Marion Smith to the Pacific Bank, upon which the check was drawn, introduced her to one of the officers and told him that she wanted to draw the money, but would immediately redeposit the same to the credit of the firm. The check was presented, the money was drawn and handed to Spohr, who made out a deposit slip in the name of Brown, Draper & Co. and redeposited the money to the credit of the firm. The amount was debited to the Marion Smith account.

A new account was then opened upon the books of Brown, Draper & Co. in the name of John Spohr and A. B. Potterton, trustees, and on January 2nd, 1897, the first business day after the foregoing transaction at the bank, that new account was credited with a cash item of $10,000. On the 7th day of January, 1897, Brown drew another check in the name of Brown, Draper & Co. to the order of Marion Smith for $10,000, and on that day precisely the same procedure was followed at the bank that had been taken in the drawing and redepositing of the first $10,000 on the 31st day of December, 1896. The Marion Smith account upon the books of the firm was also debited with the last-mentioned sum, and on the same day the account of the trustees was credited with a like sum, making a total credit to that account of $20,000. The balance of the Marion Smith account, amounting to $1,620.37, was transferred to Brown's loan account, and the Marion Smith account was closed.

Under date of December 31st, 1896, the day when the first $10,000 was withdrawn from the Marion Smith account and transferred to the account of the trustees above named, Brown also executed a deed of trust setting forth the delivery to the trustees of the sum of $20,000 in trust to loan the same to

Brown, Draper & Co. upon their firm notes payable on demand, principal payable upon the death of Brown, or before his decease if the trustees should see fit in their discretion to demand such payment, and in the event of such payment to reinvest the proceeds. The income of the trust was directed to be paid to Marion Smith during her lifetime, and then to various beneficiaries in certain named contingencies. The trust deed further reserved to Brown, the trustor, the right to revoke, modify, change or supplement the provisions thereof and recited that the beneficiary took solely as the recipient of Brown's bounty.

When the checks above referred to were drawn, demand notes for the same amounts, dated on the days when the moneys were received by the firm and credited to the trustees, were drawn in the name of Brown, Draper & Co. to the order of the trustees and pinned to the deed of trust. The trustees executed a declaration of trust bearing the same date as the deed of trust, wherein they acknowledged the receipt of the sum of $20,000 in trust for the purposes therein specified, and covenanted to execute the trust. Spohr, one of the trustees, took possession of these instruments, and placed them in a part of the safe of Brown, Draper & Co. where he kept his own papers. These notes and trust deeds have ever since been in the possession of Spohr, and have never been in the possession of or under the control of Brown, or any member of the firm of Brown, Draper & Co.

Thereafter, and from time to time, the account of the trustees was credited with the interest earned by that fund, and such interest was paid by the firm to the beneficiary, Marion Smith, until the fall of 1901.

On the 4th day of October, 1901, Brown executed a modification of the trust deed, which provided, among other things, that the income of this fund should be paid by the trustees to Brown during his life, and after his death to Marion Smith during her life, and upon her death the principal of the trust fund should be paid to the issue her surviving, or in default of such issue then to the "Chapin Home," and in other

respects reaffirming the trust including the reserved power of revocation. At the same time the trustees signed and delivered to Brown a declaration accepting the trust according to its terms.

Between January 28th, 1901, and May 2nd, 1901, Brown executed eight other deeds of trust for various amounts aggregating $75,000. These were as follows : 1. For the benefit of Alfred Potterton, dated and acknowledged January 28th, 1901, in the amount of $25,000. 2. For the benefit of Louisette H. Smith, dated and acknowledged February 4th, 1901, in the amount of $5,000. 3. For the benefit of Isabel H. Smith, dated and acknowledged February 4th, 1901, in the amount of $5,000. 4. For the benefit of Ainsworth Brown, dated and acknowledged March 28th, 1901, in the amount of $10,000. 5. For the benefit of Ruth Sawyer, dated and acknowledged March 28th, 1901, in the amount of $5,000. 6. For the benefit of Alfred B. Potterton, dated and acknowledged April 29th, 1901, in the amount of $10,000. 7. For the benefit of Etha J. Sawyer, dated and acknowledged April 29th, 1901, in the amount of $10,000. 8. For the benefit of John Spohr, dated and acknowledged May 2nd, 1901, in the amount of $5,000.

These eight deeds of trust are, excepting the beneficiaries and trustees, all in the same form and provide, in substance, that the respective sums therein mentioned are given to the trustees for the following purposes : To loan the same to Brown, Draper & Co. upon their firm notes, payable on demand with interest, and upon the death of Brown, or before his decease, in case the trustees see fit to do so, to demand payment of said notes and to reinvest the proceeds thereof. The income of the several trust funds to be paid to Brown during his life and after his death to the beneficiaries therein named, and upon the death of the beneficiaries to divide the principal as therein directed. These several trust deeds also provided for a substitution of trustees in case of vacancies, and reserved the same power of revocation expressed in the trust first above mentioned for the benefit of Marion Smith.

In each of the eight cases referred to Brown drew the
check of Brown, Draper & Co. to his own order for the
amount of the proposed trust, and, after indorsement by him,
the check was handed to Spohr, who, at the request of Brown,
presented it for payment at the bank, with the explanation
that it was intended to redeposit the money, but he wished to
see the actual bills. The amount of money called for by the
checks having been shown to Spohr, he made out deposit slips
for the same amounts in the name of Brown, Draper & Co.,
and handed them to the receiving teller of the bank and the
deposits were entered in the pass book of Brown, Draper &
Co. The amount of these checks was charged in the firm
books to the loan account of Brown, new accounts were opened
with the trustees, who were credited with the proceeds pre-
cisely as if the cash had been loaned. Demand promissory
notes of Brown, Draper & Co. for the several amounts were
executed by Brown and pinned to the respective trusts and
handed to the trustees who, in each case, executed correspond-
ing declarations of trust. These trust deeds and promissory
notes were in the possession of the respective trustees at the
time of Brown's death, and were never after their delivery in
the custody or under the control of Brown, or of Brown,
Draper & Co.

The transactions relating to each of such eight trusts were
completed on the respective days on which they are dated,
and on each of said days Brown's loan account with the firm
of Brown, Draper & Co. had to its credit a sum, excluding
his share of the firm's capital, greater than the aggregate of
all the checks drawn as above set forth.

In January, 1902, checks were drawn to the order of the
respective trustees for the interest accruing upon the trust
funds for the year 1901, which checks were indorsed by the
trustees to Brown, and by him indorsed to Brown, Draper &
Co., then delivered to Spohr, and by him credited on the
firm's books to Brown's loan account with the firm.

On February 27th, 1902, Brown died, and the firm of
Brown, Draper & Co. was dissolved. On the 5th day of

March succeeding Brown's death, the trustees met Thompson, one of the survivors of the firm, and presented for payment their several notes against the firm. Thompson admitted that the notes were firm obligations. Since that time five per cent has been paid on account of the principal thereof. The firm was at no time insolvent and no rights of creditors are involved in this litigation.

On May 29th, 1897, Brown made a will, disinheriting his wife and children, except his youngest son, the appellant herein, in which will he stated that his reason for the disposition of his estate therein made was that his family had been undutiful and disrespectful to him, and that his wife was possessed of sufficient means to support herself and the children. This will was supplemented by two separate codicils executed on October 1st, 1901, and January 15th, 1902, respectively, in which he authorized the continuance of his capital in the firm in accordance with the copartnership agreement, and directed his niece, Marion Smith, to take charge of his mortal remains and direct his funeral obsequies. The will and codicils were duly admitted to probate, and all the next of kin, heirs at law, trustees and beneficiaries under the several trusts above set forth are parties to this action.

*Frederic R. Kellogg* and *Dean Emery* for appellant. All of the alleged trusts are invalid because the subject-matter of none of the trusts was identified at the time when the trusts were respectively created in such manner that the legal title to it could or did pass to the trustees. (Perry on Trusts, §§ 86, 128; Chaplin on Trusts, § 53; Thornton on Gifts, § 409; *Crouse* v. *Frothingham,* 97 N. Y. 112; *Greene* v. *Green,* 125 N. Y. 510; *Rose* v. *Hatch,* 125 N. Y. 431; *Young* v. *Young,* 80 N. Y. 430.) The acts of the parties did not constitute a valid delivery of the subject-matter of any of the alleged trusts. (*Doty* v. *Willson,* 47 N. Y. 585; *Jackson* v. *Railroad,* 88 N. Y. 521; *Curry* v. *Powers,* 70 N. Y. 219; *Young* v. *Young,* 80 N. Y. 436; *Martin* v. *Funk,* 75 N. Y. 134; *Matter of Crawford,* 113 N. Y. 566; *Wadd* v. *Hazleton,* 137 N. Y.

222; *Gannon* v. *McGuire*, 22 App. Div. 46; *Huntington* v. *Gilmore*, 14 Barb. 248; *Shindler* v. *Houston*, 1 N. Y. 261.) Not only were the steps taken legally inadequate, but the uncontradicted evidence shows a clear absence of any intent on the part of Joseph H. Brown to create a trust in any instance which should become legally operative during his own life, his only desire being to retain his absolute ownership and control over these funds as long as he lived, and to execute instruments in the nature of testamentary provisions which should not be subject to a will contest, and further shows that he surrendered no substantial rights whatever over his property. (*Warriner* v. *Rogers*, L. R. [16 Eq. Cas.] 353; *Martin* v. *Funk*, 75 N. Y. 140; *Townsend* v. *Rackham*, 143 N. Y. 516; *Markey* v. *Markey*, 38 N. Y. S. R. 173; *Govin* v. *De Miranda*, 79 Hun, 286; *Tyrrel* v. *Bank*, 77 App. Div. 134; *Lehr* v. *Jones*, 74 App. Div. 54; Perry on Trusts, § 82; *Nutt* v. *Morris*, 142 Mass. 3; *Sherman* v. *Bank*, 138 Mass. 531; *Smith* v. *Speer*, 34 N. J. Eq. 336; *Kellcher* v. *Kernan*, 16 Md. 440; *Matter of Waynesburg College*, 111 Penn. St. 132; *Pope* v. *Burlington Bank*, 73 Me. 71.)

*Adrian H. Joline* and *Arthur H. Van Brunt* for John Spohr et al., respondents. The trust deeds are valid, all requisites for the establishment of a valid trust having been complied with. (*Martin* v. *Funk*, 75 N. Y. 134; *Matter of Wachter*, 16 Misc. Rep. 137; *Matson* v. *Abbey*, 70 Hun, 475; 141 N. Y. 179; *Van Cott* v. *Prentice*, 104 N. Y. 45; *Von Hesse* v. *MacKaye*, 136 N. Y. 114; *Sullivan* v. *Sullivan*, 161 N. Y. 554; *Belmont* v. *O'Brien*, 12 N. Y. 394; *Rosenberg* v. *Rosenberg*, 40 Hun, 91; *Gilman* v. *McArdle*, 99 N. Y. 451; *Lore* v. *Durkes*, 16 Abb. [N. C.] 47.)

*Charles L. Jones* and *William R. Willcox* for St. Luke's Home et al., respondents.

WERNER, J. The nine trusts attacked by the appellant and defended by the respondents are all substantially in the same form. In each case there is a deed of trust executed by the

trustor, and a declaration of trust executed by the respective trustees. The methods adopted in the creation of these trusts are identical, except as to certain details of form. The attack upon these trusts is supported by much learning, that has been presented with great ability and skill, but when the inquiry is reduced to its final analysis there are a few simple propositions that are decisive of the case.

The appellant contends that each of these trusts, and the acts of Joseph H. Brown designed to carry out their provisions, are insufficient in law. Before entering upon the consideration of the various objections by which this contention is fortified, it is important to note two facts that underlie the whole controversy and exert a controlling influence upon it. 1. There is no question as to the rights of creditors, since the partnership of which Brown was a member was concededly solvent. 2. The objections to the validity of these trusts proceed from the kindred of Brown, who stand in his shoes. In the light of these basic facts we are enabled to enter upon the consideration of the questions involved, free from the embarrassments which frequently arise in determining the validity of trusts when the rights of third parties are involved. It is to be emphasized, therefore, that if these trusts are invalid, they are so not because of any legal right of the appellant to the funds covered by the trusts, but because there is an alleged absence of certain formalities which our laws, dictated by public policy, have laid down as necessary for the transfer of personal property through the medium of trustees.

As stated by the court below : "There are four essential elements of a valid trust of personal property: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee." (*Martin* v. *Funk,* 75 N. Y. 134; *Matson* v. *Abbey,* 70 Hun, 475; affd., 141 N. Y. 179; *Greene* v. *Greene,* 125 N. Y. 506;

*Young* v. *Young*, 80 id. 422; *Sullivan* v. *Sullivan*, 161 id. 554.) The appellant claims that several of these essentials are lacking in the trusts under consideration.

The first assertion in that behalf is that the subject-matter of none of the trusts was sufficiently identified so that the legal title would pass. The evidence in regard to the Marion Smith trust discloses that on the 31st of December, 1896, and on the 7th of January, 1897, respectively, the trustor drew two checks in the firm name for $10,000 each to the order of Marion Smith. On January 2nd, 1897, the first business day after the first of these checks was drawn, and on the day when the second was drawn, Marion Smith went to the bank with Mr. Spohr, the trustor's bookkeeper, who introduced her to the officers of the bank. The check was then cashed, the money handed to Spohr, who immediately redeposited it to the credit of the firm. The sum of $20,000 represented by these checks was charged against the account standing to the credit of Marion Smith on the firm's books, and a new account opened and credited with that sum in the name of Spohr and Potterton, the trustees. On the following 13th of January the trust deed was acknowledged and delivered, and pinned to it were two demand notes signed in the firm's name for $10,000 each, payable to the order of the trustees. The trust deed was drawn on December 31st, 1896, several days prior to its final execution. It purported to transfer to the trustees therein named $20,000, with directions that it should be loaned to the firm on its notes. On the same day the trustees executed a corresponding declaration of trust.

In regard to the other eight trusts the facts are that on the date of each the trustor drew the firm's check to the order of himself, indorsed it and sent it to the bank by Spohr, who presented it to the paying teller, asked to see the bills, which were shown him, and then had the amount thereof redeposited to the firm's account. The amount of each check was charged against the loan account of the trustor and a new account opened on the firm's books in the the names of the trustees of the various trusts, and each account was credited with the

amount of the trust to which it related. Demand notes of the firm were then drawn by the trustor for the amount of the several trusts and pinned to the respective trust deeds, which were in the possession of the respective trustees at the death of the trustor. Contemporaneously with the execution of the trust deeds the trustees executed corresponding declarations of trust.

The transactions at the bank concerning the Marion Smith trust took place before the final execution of the trust deed and the delivery of the notes, but it was plainly the intention of the trustor that all the transactions should be considered as integral parts of the scheme to create a trust for the benefit of Marion Smith in the sum of $20,000. All the transactions relating to the other eight trusts were practically contemporaneous. Regarded in that light, we think it cannot be properly held, as contended by appellant, that identification failed because no trustees were in existence to whom the title to each fund could pass. Nor do we think identification failed because the amount of each trust fund was not so separated from the general mass of moneys standing to the credit of the firm that the title to any specific portion could pass. It is true that money has no ear marks, and that the particular bills that were temporarily separated in each case from the general mass could not be identified. But this fact alone would not prevent the passing of title to particular portions of the fund. Each fund was separated temporarily at least from the general fund. It was then redeposited and the firm deducted specific amounts from the loan account of the trustor and credited like amounts to the various trustees. These sums were directed in the trust deed to be loaned to the firm. This was done, in substance and legal effect, and the firm issued its notes for the several amounts loaned to it. The firm cannot be heard to say that these transactions were mere matters of bookkeeping. It assumed the duty of applying these amounts to the purposes of the trust, and so long as there were sufficient funds to meet the obligations, and there were

no intervening rights of creditors to be prejudiced, the firm was bound to perform its duty. (*People* v. *City Bank of Rochester*, 96 N. Y. 32, 37.) The notes thus given were charged against specific portions of the general fund, which the trustees could claim notwithstanding the fact that all the moneys were mingled together. The mere mingling of funds' which are to be devoted to a specific purpose with other funds of the depositary does not destroy the right of the true owners to claim such specific funds. (*Van Alen* v. *Am. Nat. Bank*, 52 N. Y. 1; *Nat. Bank* v. *Insurance Co.*, 104 U. S. 54; *In re Hallett's Estate*, L. R. [13 Ch. Div.] 696; *Pennell* v. *Deffell*, 4 DeG., M. & G. 372.)

It is further urged by the appellant that there was no valid delivery of the subject-matter of the several trusts. It may be admitted that the transactions at the bank standing alone would, perhaps, not constitute a good and valid delivery so as to divest the trustor of ownership of the funds in question, but when these transactions are considered in connection with the trust deeds, the notes and all that entered into the general scheme, we think it is clear that there was a valid delivery.

The final question is whether there was a good legal consideration to uphold the notes. We regard the consideration in the Marion Smith trust so clearly established as to render discussion unnecessary. The evidence shows that for many years prior to the transactions in question there had been an account on the books of the firm to the credit of Marion Smith of over $20,000, upon which she drew interest and over which she exercised control. This account was wiped out, and the demand notes issued to the trustees for $20,000. This sum was concededly credited to the firm's general account so that there can be no question as to the liability of the firm to pay the notes.

The matter of consideration as to the eight other trusts is somewhat more involved. The trustor had what is known as a loan account on the books of the firm. This loan account consisted of profits which were his. These profits were not

a contribution to capital, but a loan which he allowed to remain in the firm's treasury and on which the firm credited him with interest. This was an individual account separate and apart from the partnership accounts. The amount credited to him on this account was more than sufficient to cover the aggregate sum of all the trusts, and he had the absolute right and power to dispose of it as he pleased. It must follow, therefore, that if there was a sufficient identification and delivery of the funds in question to transfer the legal title thereof to the trustees, the notes given in the transaction were enforcible obligations of the firm in the hands of the trustees. We think the learned counsel for the appellant is in error in assuming that no action would lie in behalf of the trustor against the other members of the firm to recover the amount of his loan account without first having a partnership accounting. Although ordinarily one partner may not sue his copartner at law in respect to partnership dealings, if the cause of action is distinct from the partnership accounts, and does not involve their consideration, it is maintainable. (*Howard* v. *France*, 43 N. Y. 593; *Ferguson* v. *Baker*, 116 id. 257.) In many cases involving transactions between partners separate and apart from their contributions to capital, the courts have permitted actions at law to be maintained between partners to recover sums loaned to or borrowed of the firm. *Crater* v. *Bininger* (45 N. Y. 545) was such a case and this court there said: " If the obligation or contract, though relating to a partnership transaction, is separate and distinct from all other matters in question between the partners, and can be determined without going into the partnership accounts, an action will lie by one partner against his copartner." Since there is no question in the case at bar but that the trustor's loan account was more than sufficient to cover the amount of all these notes, and as there were no intervening rights of creditors, there was no contingency in which an accounting could have been necessary to ascertain the amount due him. But, even if there had been a necessity for a partial accounting, that would not have been

an obstacle to the maintenance of such an action. This was distinctly held in *Bank of B. N. A.* v. *Delafield* (126 N. Y. 410, 416). In the case of *Stettheimer* v. *Tone* (114 N. Y. 501) one of the members of the firm of private bankers who had contributed the entire capital, the other members simply contributing their skill and energy, deposited with the firm about $10,000 over and above his contribution to the capital. He drew a check on the firm for that sum payable to the order of the plaintiff, who was his agent. Plaintiff took the check to the office of the firm and received a draft in exchange therefor. In an action on that draft against the firm, it was held that the plaintiff, who was acting as the agent of Stettheimer, the partner who drew the check, could recover. This court there said : " The defendants Tone do not appear to be in a position to question the title of the plaintiff. The money on deposit was never contributed to the capital account. It was Sigmund's individually and it was so understood by every member of the firm. By the understanding and agreement of the partners, so far as this deposit was concerned, he occupied the same relation towards the firm (as between themselves) as that of any other depositor. So long as he was not in default, under the articles of the copartnership, he had the same right to draw out this fund as had the other depositors. A right which could have been enforced in an action brought directly against his partners." (17 Am. & Eng. Ency. of Law [2nd ed.], 1261.)

If we have thus far reasoned correctly, it must follow as a logical sequence that, as these notes were enforcible demands against the firm, the case is not within the rule illustrated in *Holmes* v. *Roper* (141 N. Y. 64), and *Harris* v. *Clark* (3 id. 93), to the effect that a promissory note given without consideration, and intended to operate as a gift, is executory only, and nothing passes thereby. In those cases it was held, in effect, that the instrument under scrutiny was a mere promise to pay and, as no delivery of the fund represented by the instrument was ever made, the intended gift did not take effect. In the case at bar, as we have seen, title to the funds

represented by the notes had passed to the trustees, and in their hands were valid obligations of the firm upon which actions could be maintained.

We think these considerations dispose of all the questions raised by the appellant which were not fully covered by the opinion of the Appellate Division, and lead to an affirmance of the judgment, with costs.

Cullen, Ch. J., O'Brien, Bartlett and Martin, JJ., concur; Vann, J., not voting; Haight, J., absent.

Judgment affirmed.