ESTELLE ANDERSON *vs.* P. CHAUNCEY ANDERSON, Individually, as Trustee and as Executor.

JUNE 6, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Trusts inter vivos.   Revocation.*
On bill in equity to enforce trusts, evidence considered and *held* that valid trusts were created and that they were never revoked.

BILL IN EQUITY to enforce trusts. Heard on bill, answer, replication, and statement of facts.

VINCENT, J. This is a suit in equity to enforce two trusts. It is brought by the beneficiary against the defendant as executor of Rosalie R. Ford, the settlor, and as trustee under the trusts. It comes before this court on bill, answer, replication, and a statement of facts which, by stipulation, is to be used in lieu of evidence.

The complainant was a cousin of Rosalie R. Ford. An intimate friendship had long existed between them at the time when the trusts in question were created and such relations continued thereafter for a period of some thirteen years until the death of Rosalie R. Ford in October, 1916.

E. Ellery Anderson, the father of the respondent, was a lawyer in the city of New York, the attorney for Mrs. Ford, and the person later selected by her to hold certain bonds and stocks placed in his hands in trust for the complainant.

The following taken from the agreed statement of facts furnishes a sufficient history of the case.

On June 24, 1900, Rosalie R. Ford wrote to E. Ellery Anderson, " . . . Also please invest as you think best the sum of 5000 dollars for the benefit of my cousin, Estelle Anderson, she to draw the interest and have possession of that sum, only after my death . . ."

On February 26, 1901, E. Ellery Anderson wrote Rosalie R. Ford, "Answering your letter of January 24th, I write to say that I have put aside in an envelope with a suitable endorsement showing that the securities are intended as a gift to Stella, the following securities: 2 Missouri, Kansas & Texas Bonds for $1,000 each, Nos. 6817, 6818; 2 Morris & Essex Bonds for $1,000 each, Nos. 3098 and 3099; 1 Metropolitan Elevated Bond for $1,000, No. 1216. Please, in your answer to this letter say that you affirm and approve this arrangement, or else modify the same, if you think proper to do so."

On March 12, 1901, Rosalie R. Ford wrote to E. Ellery Anderson, answering his said letter of the 26th of February, 1901, " . . . I am quite satisfied with the arrangement which you have made for Stella. One question: in case of her possible (not possible) death before me, does the money revert to her heirs, or back to me and mine? . . ."

On April 19, 1901, E. Ellery Anderson wrote Rosalie R. Ford, " . . . On looking at your letter of March 12th, I find you ask me the question whether the securities set aside for Stella in the event of her death before you would

come back to you or go to her heirs. As I understand your instructions these securities have been handed to me in trust for Stella with directions to deliver them to her in the event of your death before her, and to return them to your own securities in the event of her death before you. . . ."

The securities referred to in said letter of February 26, 1901, were duly set aside by E. Ellery Anderson and placed by him in an envelope upon which he then caused to be made the following endorsements: "This envelope contains: 2 Morris & Essex First Mtge Bonds, each for sum of $1,000; Nos. 3098, and 3099; 2 Missouri, Kansas & Texas Ry. Co. 1st Mtge bonds, each for sum of $1,000; Nos. 6817, and 6818; 1 Metropolitan Elevated 1st Mtge Bond for sum of $1,000, No. 1216. These bonds have been delivered to me by Rosalie R. Ford with instructions to hold them as the property of and to be delivered to Miss Estelle Anderson, in accordance with instructions heretofore given to me by Mrs. Ford. Also extract from letter of E. Ellery Anderson to Mrs. Thomas Ford, dated Feb. 26, 1901. Also letter from Mrs. Thomas Ford to E. Ellery Anderson, dated March 12th, 1901."

The complainant, Estelle Anderson, was not notified of the creation of the aforesaid trust until after the decease of Rosalie R. Ford.

On August 11, 1902, E. Ellery Anderson, during an interview with Rosalie R. Ford in Europe, at her request wrote out the following letter addressed to himself, which was thereupon signed by Rosalie R. Ford and delivered to him: "For the purpose of carrying into effect the provision I have desired to make for my cousin Stella Anderson I hereby request you to set aside sixty shares of Steel Preferred stock and pay over the income as received therefrom to Stella— If she should die before me this provision is to cease and the said sixty shares are to be returned to me—If Stella should survive me then you are to deliver the said sixty shares of stock to her."

At or about the date of said letter (August 11, 1902), Rosalie R. Ford told Estelle Anderson of the creation and provisions of said trust; and E. Ellery Anderson also told Estelle Anderson of the trust and stated that she would receive the income during the life of Rosalie R. Ford and that upon the death of Rosalie R. Ford she would receive the principal if she survived. The sixty shares of preferred stock of the United States Steel Corporation referred to, in said letter of August 11, 1902 were, at the date of said letter, included in a certificate for one hundred shares owned by Rosalie R. Ford, standing in the name of E. Ellery Anderson and held by him for her benefit. E. Ellery Anderson, shortly after the date of said letter (August 11, 1902), returned to New York with said letter and thereupon caused said certificate for one hundred shares to be split and a new certificate for sixty shares to be issued in his name. This certificate, together with said letter, he placed in an envelope upon which he caused to be endorsed the following: "Stella Anderson 60 shares of United States Steel Corporation Preferred Stock Cert. No. C 25451 P. V. $6000. Also letter from Mrs. Rosalie R. Ford dated August 11th 1902 Presenting Miss Stella Anderson with the above stock." Said envelope, containing said certificate and letter, was then placed by E. Ellery Anderson in a vault in Jersey City where it remained with its contents until after his death.

On January 13, 1903, E. Ellery Anderson, after his return to New York as aforesaid, wrote to Estelle Anderson as follows: "  . . .  these 60 shares of Steel preferred which Rose (Rosalie R. Ford) instructed me to hold for your benefit, subject however to the event of your death before Rose, has declared its usual dividends at the rate of 7% per annum, and these dividends have been carried to your credit as usual in the statement. When I saw you in Lausanne you explained to me that you could not conveniently get through with less than $2100 per annum if you were to retain your apartment in Paris. As the present arrangement carries your income to that figure, I hope it will enable you

to meet all your expenses without trouble." Thereafter during the life of Rosalie R. Ford the dividends declared upon this stock, amounting to $420 a year, were paid regularly to Estelle Anderson.

On February 22, 1904, E. Ellery Anderson died. Upon his death his son and the executor of his will, the defendant, P. Chauncey Anderson, received the said two envelopes and their contents. He thereupon caused to be transferred into his own name the sixty shares of stock, placed the new certificate therefor and the said letter of August 11, 1902, in the same envelope, retained possession of both envelopes and their contents, and continued to pay the income from the sixty shares of stock to Estelle Anderson.

In 1908 the Metropolitan Elevated Railroad bond above mentioned was paid and P. Chauncey Anderson wrote Rosalie R. Ford on July 10, 1908, " . . . You will remember that one of these bonds (Metropolitan Elevated R. R.) was put in an envelope by Father for Stella at the time you set aside for her $5,000 to be delivered to her only in case you died before her. I suppose it is your wish that I substitute one of these new bonds for the Metropolitan bond which was paid. . . ."

On July 27, 1908, Rosalie R. Ford replied to P. Chauncey Anderson, " . . . I will be thankful to you, if you can arrange the 5000 dollars for Stella, as they were; she now to draw the income, and in case of my dying first, to get the 5000 (five thousand) dollars; as I have left her nothing in my will; in case of her death before me, the 5000 dollars to return to me. . . ."

On October 13, 1908, P. Chauncey Anderson replied to Rosalie R. Ford, " . . . You say in your letter 'I will be thankful to you if you can arrange the 5000 dollars for Stella as they were, she now to draw the income, and in case of my dying first to get the 5000 (five thousand) dollars, as I have left her nothing in my will; in case of her death before me, the 5,000 dollars to return to me.' There were two funds set aside for Stella, as you will remember. One was

sixty shares of Steel preferred, from which she has always received the income, and the principal of this was subject to the same arrangement which I have quoted above, that is, if she should die first, it was to be returned to you, but if she survived you, it was to go to her. The same arrangement applied to the principal of the $5,000 of bonds set aside for her, but the income from them has never been paid to her, and I think was not intended to be. As I understood it, your idea was to give her the principal of these two funds provided she survived you, but the income was only to be paid to her from the steel stock during your lifetime. At any rate, that is the way it has always been done. . . . ''

On October 24, 1908, Rosalie R. Ford replied to P. Chauncey Anderson, '' . . . I do not now understand very well about the arrangement for Stella's money. I only intended that she should have 5000 dollars at my death, drawing the income from it during my life time. You write that *two* funds are set aside for Stella. Does that mean that at my death, she would have 10,000 dollars? That is more than I would be willing to leave, and do justice to my natural heirs, my nieces and nephews. I wish when you come over, you would bring me a copy of my will. I think I might like to make some changes in it, many circumstances having changed since I made it. I would really like to know how much I have left in legacies, as I know those are always paid first, and how much would be left for my heirs, after the legacies are paid. . . . ''

P. Chauncey Anderson, after the said Metropolitan Elevated Railroad bond was paid, drew a line through the name of this bond on the envelope in which it was contained and endorsed thereon in pencil the following: "pd. off and one Am. Tel. & Tel. Co. 4% convertible gold bond sub." On January 16, 1909 P. Chauncey Anderson also made the following endorsement in pencil on this envelope: "taken by P. C. A. Jan. 16, 1909."

In February and March, 1909, P. Chauncey Anderson was in Europe and saw both Rosalie R. Ford and Estelle Anderson.

On February 22, 1909, Rosalie R. Ford executed a will by which she bequeathed $5,000 to Estelle Anderson. No provision for her had been made in Rosalie R. Ford's two previous wills.

On April 12, 1909, P. Chauncey Anderson wrote upon each of the envelopes as follows: "cancelled—provision now made by Mrs. Ford's Will of March 1909. These securities are now property of Rosalie R. Ford. April 12, 1909. P. Chauncey Anderson."

P. Chauncey Anderson has no recollection of the reason for writing the last mentioned endorsements (which are in his handwriting) upon the envelopes. He has no recollection of any conversation with or communication from Rosalie R. Ford, or any one in her behalf, which would account for or suggest the reason for making the said endorsements. He has no recollection of ever receiving any directions from Rosalie R. Ford cancelling or modifying said trusts or either of them, or any suggestion that they be cancelled or modified. Until the death of Rosalie R. Ford, he continued to hold both of said envelopes and their contents, and to pay the income from said stock to Estelle Anderson.

On May 24, 1909, Thomas G. Ford, husband of Rosalie R. Ford, died. In said will executed by Rosalie R. Ford on February 22, 1909 (being the last will executed by her prior to Thomas G. Ford's death), the income of her residuary estate was payable to Thomas G. Ford during his life.

In June and July, 1909, P. Chauncey Anderson was in Europe and saw both Rosalie R. Ford and Estelle Anderson.

On July 7, 1909, and again on August 19, 1910, Rosalie R. Ford executed a will by which she bequeathed $10,000 to Estelle Anderson. The last mentioned will was Rosalie R. Ford's last will. No will made in March, 1909, has been found or is known to have been made. In the aforesaid wills of 1909 and 1910, executed after Thomas G. Ford's death, the residuary estate was given to the persons (hereinafter named) who in said will of February 22, 1909, were to take upon the death of Thomas G. Ford.

Thereafter Rosalie R. Ford stated to Estelle Anderson that she had left nothing to Estelle Anderson's brother, but had left more to Estelle Anderson so that Estelle Anderson could provide for him. ·

During her life Rosalie R. Ford gave Estelle Anderson financial assistance, in addition to the income of the said shares of Steel stock, to the extent of $500 each year, including $150 to assist in providing for Estelle Anderson's brother who is still living.

Rosalie R. Ford died a legal resident of Newport, Rhode Island, on the 21st day of October, 1916, leaving a personal estate of the value of approximately $118,000, exclusive of the property comprised in the two trusts herein mentioned. At the time of her death she was seventy-eight years old.

These trusts were created chiefly, if not wholly, by certain correspondence between Mrs. Ford and E. Ellery Anderson which has already been set forth. As this court said in *Talbot* v. *Talbot*, 32 R. I. 72, 86: "The general principle of all the cases, both English and American, is unquestionably the same, that in order to create a valid, voluntary trust *inter vivos*, where the donor is not trustee, there must be an intent to make a present transfer of ownership upon trust, and the donor or settlor must do everything that, according to the nature of the property, is necessary to execute that intent." And it is also stated in *Brown v. Spohr*, 180 N. Y. 201, 209 that, "There are four essential elements of a valid trust of personal property: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee." These elements are comprehended in the statement of facts with which we have to deal in the present case.

The respondent does not question the validity of the trusts at the time of their creation, but he claims (1) that they were

revocable and (2) that they have in fact been revoked, and he therefore seeks a determination of these two questions. For convenience these trusts may be referred to as the "bond trust" and the "stock trust."

We will first take up the question as to whether these trusts were in fact revoked by Mrs. Ford. If they were not revoked and no attempt was made to revoke them, the consideration of the other question, as to whether they were by their terms revocable, would become entirely unnecessary.

(1) The respondent claims that the bond trust was revoked by the stock trust and later that the stock trust was revoked by the will of Mrs. Ford executed February 22, 1909.

If it be assumed that in the trusts as created a power of revocation was reserved to Mrs. Ford or that such a revocation was intended but omitted by mistake, and therefore to be considered as existent, we come immediately to the further question, Did she exercise that power or did she intend her subsequent acts to be construed as an exercise of such power? In order to reach an affirmative conclusion we must find some sufficient evidence of her intent to revoke and of the act of revocation. *Cotting* v. *De Sartiges*, 17 R. I. 668; *Mason* v. *Wheeler*, 19 R. I. 21.

The bond trust was established and its terms defined by the letter of Mrs. Ford to E. Ellery Anderson of June 24, 1900, in which she requested him to invest the sum of $5000 for the benefit of the complainant who should receive the principal of the trust upon Mrs. Ford's death; the letter of Mr. Anderson in reply thereto, although he appears to have erroneously referred to the date of Mrs. Ford's letter as January 24 instead of June 24, in which he states that he has put aside in an envelope with a suitable endorsement $5,000 in bonds; and the letter of Mrs. Ford of March 12, 1901 to Mr. Anderson in which, after expressing her satisfaction with the arrangement made, she inquires whether the *corpus* of the trust in case Miss Anderson should die first would go to the heirs of Miss Anderson or would come back to her.

In answer to this inquiry, Mr. Anderson in his letter of April, 1901, informed Mrs. Ford that the "securities have been handed to me in trust for Stella with directions to deliver them to her in the event of your death before her, and to return them to your own securities in the event of her death before you."

Having in view this correspondence between Mrs. Ford and Mr. Anderson it would seem that the terms of the trust were clearly determined and must have been fully understood by both of them.

The endorsement upon the envelope after describing the bonds enclosed continues in these words, "These bonds have been delivered to me by Rosalie R. Ford with instructions to hold them as the property of and to be delivered to Miss Estelle Anderson, in accordance with instructions heretofore given to me by Mrs. Ford." Following this is a further endorsement making reference to two letters, one written by Mr. Anderson to Mrs. Ford, dated February 26, 1901, and the other written by Mrs. Ford to Mr. Anderson, dated March 12, 1901. In the first of these letters Mr. Anderson advises Mrs. Ford that he has placed the securities in an envelope with a suitable endorsement showing that they are intended as a gift to Stella in accordance with the letter of Mrs. Ford of June 24, 1900. The second of these letters expresses Mrs. Ford's approval of what had been done.

E. Ellery Anderson died on February 22, 1904, and the envelope containing the bonds with the endorsements as above stated passed into the hands of P. Chauncey Anderson, his son and executor and now the respondent in this suit, by whom they were and are retained. On February 22, 1909, Mrs. Ford executed a will in which she bequeathed to Estelle Anderson the sum of $5,000 and on April 12, 1909, P. Chauncey Anderson endorsed upon the envelope enclosing the bonds these words: "cancelled—provision now made by Mrs. Ford's Will of March 1909. These securities are now property of Rosalie R. Ford. April 12, 1909. P. Chauncey Anderson."

Although this endorsement is in his handwriting, P. Chauncey Anderson has no recollection of the reason for writing it; he has no recollection of any expressed wish or instructions from Mrs. Ford, or from anyone in her behalf, that he should make such endorsement; he has no recollection of any suggestion or directions from Mrs. Ford expressive of any desire on her part to cancel or modify the trust. The envelope remained in his possession down to October 21, 1916, when Mrs. Ford died, without any apparent attempt on his part to restore the contents to Mrs. Ford or to again associate them with other effects and property belonging to her.

While these statements of P. Chauncey Anderson regarding the endorsement placed by him on the envelope are not without some odor of incredibility we do not think that they can be altogether ignored. As there is no proof that this endorsement was made with the authority or even with the knowledge of Mrs. Ford, we do not see how it could serve any other purpose except to refresh the recollection of P. Chauncey Anderson as to any instructions which he might have received from Mrs. Ford respecting the trust. 1 Green. Ev. 16th Ed. 544. But even with the assistance of the endorsement he is evidently unable to recall any authority for making it and it must stand as his own independent, irresponsible act, possibly based upon some mistaken assumption that the bequest of $5,000 to the complainant in the will of Mrs. Ford of February 22, 1909, was intended to take the place of and cancel the bond trust.

It may be here noted that Mrs. Ford by her said will of February 22, 1909, gave to her husband, Thomas G. Ford, the income of her residuary estate during his life; that on May 24, 1909, Thomas G. Ford died; that on July 7, 1909, and again on August 19, 1910, Mrs. Ford executed wills in each of which she bequeathed to Estelle Anderson the sum of $10,000, the will of August 19, 1910, being her last will.

The matter of the stock trust had its origin in a letter dated August 11, 1902, from Mrs. Ford to E. Ellery Ander-

son in which she says: "For the purpose of carrying into effect the provision I have desired to make for my cousin Stella Anderson I hereby request you to set aside sixty shares of Steel Preferred stock and pay over the income as received therefrom to Stella— If she should die before me this provision is to cease and the said sixty shares are to be returned to me— If Stella should survive me then you are to deliver the said sixty shares of stock to her."

Acting upon this letter E. Ellery Anderson who was holding in his own name, for Mrs. Ford, a certificate for one hundred shares of this stock caused the certificate to be split and a new certificate for sixty shares, also issued in his name, to be placed in an envelope upon which he made the endorsement, "Stella Anderson 60 Shares of United States Steel Corporation preferred Stock Cert. No. C 25451 P. V. $6000. Also letter from Mrs. Rosalie R. Ford dated August 11th 1902 Presenting Miss Stella Anderson with the above stock," and deposited it in his private vault where it remained until after his death. Later this envelope also came into the hands of P. Chauncey Anderson, the respondent, as the executor under his father's will. It bears the same endorsement as the bond envelope and he is equally unable to recall any reason or authority for putting such endorsement thereon.

The complainant received no income from the bond trust during the life of Mrs. Ford and only learned of the existence of that trust after the death of Mrs. Ford, but she was advised as to the stock trust by both Mrs. Ford and Mr. Anderson and regularly received the income therefrom, down to the time of Mrs. Ford's death, October 21, 1916. If the stock trust had been revoked by the will of Mrs. Ford of February 22, 1909, as endorsed by P. Chauncey Anderson on the envelope, why did he continue, for upwards of five years, to pay the income from that trust to the complainant? Neither the agreed statement of facts nor the respondent's brief furnish an answer.

Prior to as well as during the existence of both trusts the complainant was from time to time the recipient of financial assistance from Mrs. Ford sufficiently substantial to indicate the existence of an unusual friendship and a fixed determination on the part of Mrs. Ford to provide liberally for the complainant's welfare.

It appears from the letter of E. Ellery Anderson to the complainant, dated January 13, 1903, and written after he had arranged the matter of the stock trust, that the complainant had theretofore been unable to provide as liberally for her living expenses as seemed to her consistent with her reasonable comfort and it would therefore be in keeping with the previous attitude of Mrs. Ford toward the complainant that she should desire to provide the latter with a fixed income which combined with other resources already enjoyed would meet her wants.

Without going too much into detail, it seems to us that the respondent's claim that Mrs. Ford intended to limit her beneficence to the complainant to a single gift and that the stock trust revoked the bond trust and that the bequest of $5,000 in the will wiped out both trusts, assuming that the first trust had not already been disposed of, is not supported by any competent evidence, but is merely an inference which seems to us to have no reasonable foundation. It would only be natural that many years of such harmonious relationship and continuous association should nourish an inclination and desire on the part of Mrs. Ford to provide more liberally for the comfort and happiness of the complainant. The growth of such a feeling is evidenced by the doubling of her gift to the complainant in her last two wills after the decease of her husband to whom a life interest in the residuary estate had been previously given.

The respondent in his attempt to show a revocation of the two trusts seems to place much reliance upon a letter received from Mrs. Ford, dated October 24, 1908. In order to fully understand this letter it will be necessary to refer to two other letters which preceded it, one from Mrs. Ford to P.

Chauncey Anderson dated July 27, 1908, and the other from P. Chauncey Anderson to Mrs. Ford dated October 13, 1908.

In her letter of July 27, 1908, Mrs. Ford says: ". . . I will be thankful to you, if you can arrange the 5000 dollars for Stella, as they were; she now to draw the income, and in case of my dying first, to get the 5000 (five thousand) dollars; as I have left her nothing in my will; in case of her death before me, the 5000 dollars to return to me. . . ." To this P. Chauncey Anderson replied on October 13, 1908, as follows: ". . . You say in your letter 'I will be thankful to you if you can arrange the 5,000 dollars for Stella as they were, she now to draw the income, and in case of my dying first to get the 5000 (five thousand) dollars, as I have left her nothing in my will; in case of her death before me, the 5,000 dollars to return to me.' There were two funds set aside for Stella, as you will remember. One was sixty shares of Steel preferred, from which she has always received the income, and the principal of this was subject to the same arrangement which I have quoted above, that is, is she should die first, it was to be returned to you, but if she survived you, it was to go to her. The same arrangement applied to the principal of the $5,000 of bonds set aside for her, but the income from them has never been paid to her, and I think was not intended to be. As I understood it, your idea was to give her the principal of these two funds provided she survived you, but the income was only to be paid to her from the steel stock during your lifetime. At any rate, that is the way it has always been done. . . ."

Following this is the letter of Mrs. Ford, October 24, 1908, containing the following language to which the respondent attaches much importance. " . . . I do not now understand very well about the arrangement for Stella's money. I only intended that she should have 5000 dollars at my death, drawing the income from it during my life time. You write that *two* funds are set aside for Stella. Does that mean that at my death, she would have 10,000 dollars? That is more than I would be willing to leave, and do justice

to my natural heirs, my nieces and nephews.  I wish when you come over, you would bring me a copy of my will.  I think I might like to make some changes in it, many circumstances having changed since I made it.  I would really like to know how much I have left in legacies, as I know those are always paid first, and how much would be left for my heirs, after the legacies are paid.  . . . "

Without going into the question of the admissibility of this correspondence, but giving it all the force which could reasonably be claimed for it, we find practically nothing therein leading to the conclusion that Mrs. Ford intended or desired to revoke these trusts.  In his letter of October 13, 1908, P. Chauncey Anderson fully and clearly explained to Mrs. Ford that the two trusts were still in force and that if she died first the bonds and shares of stock would go to the complainant.

Assuming that the letter of Mrs. Ford of October 24, 1908, expressed a wish that her entire gift to the complainant be limited to $5,000, there is no evidence that she later made any attempt to revoke either of these trusts although she had been previously fully advised of their existence.  Whatever may have been in the mind of Mrs. Ford on October 24, 1908, regarding the reduction of the amount which the complainant should receive, her thought was apparently controlled by some conception that the larger gift would work an injustice to her natural heirs, her nieces and nephews.

P. Chauncey Anderson was in Europe in February and March, 1909, and again in June and July of the same year. On each of these trips he saw both Mrs. Ford and the complainant, but he apparently received no information as to any desire on the part of Mrs. Ford to revoke these trusts.

Mr. Ford died May 24, 1909.  The income from Mrs. Ford's residuary estate was given to her husband for life by her will of February 22, 1909.  This claim upon her bounty having been released she made two other wills, one July 7, 1909, and the other, which was her final will, August 19, 1910.  In each of them she bequeathed to the complainant

the sum of $10,000. At no time subsequent to the date of her letter of October 24, 1908, either in connection with the making of her later wills or otherwise did Mrs. Ford, so far as appears, express any wish or perform any act which could be reasonably construed as indicating a desire that these trusts should be revoked. When we consider the long-existing, intimate relations between these two women and the indisputable purpose of Mrs. Ford to contribute to the living expenses of the complainant it seems incredible that she could have had any intention of making the provision in her will a substitute for the stock trust, the result of which would be to deprive the complainant of any financial assistance for a then indefinite time, later determined by the death of the testator to be a period of approximately six years.

It is our decision that two valid trusts were created by Rosalie R. Ford for the benefit of the complainant; that said trusts were never revoked by the said Rosalie R. Ford; that the complainant is entitled to the principal of said trusts and that the same should be delivered to her by the respondent.

The parties may present to this court the form of a decree in accordance with this opinion.

*Eugene A. Kingman, Edwards & Angell,* for complainant.
*Gardner, Pirce & Thornley,* for defendant.