**Dorothy ROSENFELD, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CV–82–1979.**

United States District Court,
E.D. New York.

May 6, 1983.

The Legal Aid Society, New York City, for plaintiff; Morton B. Dicker, Arthur J. Fried, Joan Heckerling, New York City, of counsel.

Raymond J. Dearie, U.S. Atty. by Patrick B. Northup, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

### WEINSTEIN, Chief Judge:

Plaintiff challenges the determination of the Secretary of Health and Human Services denying her Supplemental Security Income (SSI) benefits because her imputed income was too high. The Secretary erred in attributing to the wife all money deposited in a joint bank account with her husband. The sums are small, but to this aged, sick woman they are important. The case must be remanded.

### I.  Facts

Dorothy Rosenfeld first inquired orally about SSI benefits on January 27, 1981; she made a formal application on February 4, 1981. At the time of her application she was 76 years old, had apparent psychiatric problems, and was residing in an adult home. She had been living with her husband of 39 years until November of 1980 when he had a heart attack. Upon his discharge from the hospital he felt that he could no longer care for his wife and placed her in the adult home.

In the first quarter of 1981 deposits were made to the Rosenfeld joint checking account as follows:

| Date | Amount | Source of Money Deposited |
|---|---|---|
| 1/2/81 | $683.80 | Social Security Benefits (H) (466.80) Social Security Benefits (W) (217.00) |
| 1/5/81 | 468.53 | Private Disability Benefits (H) (371.43) Other (97.10) |
| 1/12/81 | 412.50 | Private Disability Benefits (H) |
| 1/23/81 | 132.00 | Private Disability Benefits (H) |
| 1/26/81 | 600.00 | Transfer from Joint Savings Account (H–W) |
| 2/24/81 | 217.00 | Social Security Benefits (W) |
| 3/3/81 | 217.00 | Social Security Benefits (W) |
| 3/24/81 | 570.12 | Transfer from Joint Savings Account (H–W) |

The issue before us arises because the husband's benefit checks deposited in January were treated by the Secretary as income to the wife. In February 1981 the husband opened an individual bank account, and stopped depositing his checks to the joint account.

In February and March, the wife withdrew funds from the account in order to make payments to her adult home. The record contains copies of three checks made out to the facility during this period in the total amount of $727.85. It is not clear from the record, however, whether these constitute the only funds withdrawn from the account for the benefit of the wife. There is also evidence in the record of checking account transactions in April 1981 that may bear on the uses to which the funds deposited in the first quarter were subsequently put.

In order to determine whether the petitioner's income was low enough to qualify for SSI benefits the administrative law judge computed her income for January through March of 1981 in accordance with 20 C.F.R. § 416.221 (1981). He added the deposits of January 2nd, 5th and 12th, a total of $1,564.83. To this he added petitioner's monthly social security benefits (before the medicare deduction) of $226.60 and, averaging over the three months of the first quarter of 1981, arrived at monthly

unearned income of $748.21. Deducting the $20 monthly allowance of 20 C.F.R. § 416.-1124, petitioner's countable income came to $728.21. (The correct figure on the Secretary's theory, after eliminating computational errors, should have been $699.88.)

As a resident of her adult home—a Level II Congregate Care Facility in New York State—petitioner's SSI payment standard under the July 1, 1980 schedules then in effect was $495.16. Because petitioner's countable income exceeded this amount, the administrative law judge found that she was not eligible for SSI during January, February and March of 1981.

## II. Law

### A. Statute, Regulations and Manual

All deposits to the joint account were attributed to the petitioner as unearned income on the assumption that wife and husband had equal access to the joint account and that she in fact used funds that were deposited to the account to meet her basic needs for food, clothing, and shelter. This was done pursuant to an administrative policy memorialized in the Social Security Claims Manual (CM). At the relevant time, the Manual read:

> When a joint bank account is held by an SSI eligible [the wife] and an ineligible [the husband], the total amount of . . . any deposit to the account made by . . . the ineligible . . . is counted as income to the SSI eligible . . . .

CM Section 12305(B)(3)(a) (1979).

The Manual has since been superceded by the Program Operations Manual System (POMS), which provides that effective July 31, 1982 the SSI claimant may rebut ownership of a portion of the funds in a joint account. If the claimant is successful, a proportionate amount of the deposits and accrued interest will not be attributed to her. POMS Section SI0810.130 (1982).

The Claims Manual provisions are not dispositive. "The Manual is not subject to the procedural protections inherent in the drafting of regulations. 'It has no legal force, and it does not bind the SSA.' *Schweiker v. Hansen,* 450 U.S. 785, [789,]

101 S.Ct. 1468 [, 1472, 67 L.Ed.2d 685] (1981)." *Whaley v. Schweiker,* 663 F.2d 871, 873 (9th Cir.1981). A determination of the legitimacy of Secretary's practice of imputing all deposits to a claimant's joint bank account as income to the claimant must rest on an interpretation of the SSI statute and regulations.

Section 1612(a) of Title XVI of the Social Security Act, as amended, 42 U.S.C. § 1382a(a) (1976 and Supp.), explains that income, for the purposes of SSI eligibility and benefit levels, includes both earned and unearned income. The statute defines earned income as employment income and goes on to state, in relevant aspects, that:

> (2) unearned income means all other income, including—
>
> (A) support and maintenance furnished in cash or kind . . .
>
> (E) gifts (cash or otherwise) . . . .

This language provides little guidance in assessing treatment of joint bank accounts.

Nor do the regulations promulgated under Title XVI, as they have been in force during and since the Secretary's review of claimant's application, address this issue. 20 C.F.R. § 416.1102 (1982) defines income as "anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter." Section 416.1120 (1982), speaking to unearned income, merely tracks the statute and declares, "Unearned income is all income that is not earned income."

The government argues that the Secretary's attribution of all deposits to the joint account as income to the claimant is justified because claimant, as joint owner, had access to all funds in the account. The government also urges the court to defer to the Secretary's interpretation of income, because of his power to promulgate regulations under the Social Security Act. 42 U.S.C. § 1302.

■ While a court must respect the views of the Secretary in interpreting a statute committed to his administration, his interpretation is "not [of] controlling significance." *Batterton v. Francis,* 432 U.S. 416,

424, 97 S.Ct. 2399, 2404, 53 L.Ed.2d 448 (1977). Conspicuously absent from Title XVI is a broad delegation of authority to the Secretary to promulgate standards for characterization of income and resources for SSI eligibility. The Secretary has been given only the limited authority of formulating exceptions to requirements of deeming spousal income. 42 U.S.C. § 1382c(f)(1). In contrast, Title XIX of the Act delegates to the Secretary the responsibility for establishing general criteria on resource and income inclusion for medicaid eligibility. 42 U.S.C. § 1396a(a)(17). The deference accorded the Secretary in characterizing income for purposes of medicaid, *see Herweg v. Ray,* 455 U.S. 265, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982), does not automatically apply to the SSI program.

### B. Actual Availability

Courts considering the Secretary's denomination of assets as income to an SSI claimant have often done so under the rubric of "actual availability" to the claimant. *See, e.g., Usher v. Schweiker,* 666 F.2d 652 (1st Cir.1981) (difference between fair market rental and actual rental); *Jackson v. Schweiker,* 683 F.2d 1076 (7th Cir.1982) (same); *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir.1982) (Veterans Administration reimbursement for medical expenses); *Tsosie v. Califano,* 651 F.2d 719 (10th Cir.1981) (Veterans Administration benefits received on behalf of surviving children). The justification for this analysis lay with the prior version of the SSI regulations defining unearned income. 20 C.F.R. § 416.1120 (1980). The regulation, then entitled "Availability of Unearned Income," read, "In determining the amount of unearned income the amount actually available to the individual is considered."

The new regulations on earned and unearned income, which became effective October 3, 1980, were promulgated "to make these rules clearer and easier for the public to understand." 45 Fed.Reg. 65541 (1980). No substantive change in § 416.1120 seems to have been intended. The "availability" approach may reasonably be assumed to be of continuing vitality. That an availability analysis may be mandated by the statute itself is suggested by section 1614 of the Act, 42 U.S.C. § 1382c(f)(1), which declares that in deeming the income of a cohabiting spouse, availability is not to be considered, except as the Secretary may prescribe. A reasonable inference to be drawn is that all other income attributed to a claimant must actually be available.

■ "Courts have carefully examined when the receipt of an item of value by an SSI beneficiary constitutes income which is actually available to meet the beneficiary's basic needs." *Summy v. Schweiker,* 688 F.2d 1233, 1235 (9th Cir.1982). The Supreme Court has afforded some guidance in interpreting the availability proviso under the medicaid program found in Title XIX of the Act. Under section 1902, 42 U.S.C. § 1396a(a)(17)(B), state medical assistance programs must "provide for taking into account only such income and resources, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." In *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981), approving in principal the deeming of income from a non-eligible spouse to an institutionalized claimant pursuant to the Secretary's regulations, the Court offered its interpretation of availability. "We think that the requirement of availability refers to resources left to a *couple* after the [non-institutionalized] spouse has deducted a sum on which to live." 453 U.S. at 48, 101 S.Ct. at 2642 (emphasis in original). Where availability is determinative and the income of another is attributed to a claimant, the needs of the other individual must ordinarily be considered; the entire sum cannot automatically be imputed to the claimant.

■ In this case the deposits made to the joint checking account owned by the petitioner and her husband consisted mainly of transfers from a joint savings account (which even the administrative judge did not consider income), the husband's disability benefits, and the Social Security benefits of the husband and of the wife. The Secre-

tary made no attempt to account for the needs of the husband in attributing all his benefits as income available to the wife for her basic needs. Because wife and husband were not living together during the period under consideration, their combined needs must certainly have been greater than the individual needs of each. *Compare* U.S.C. § 1382c(f)(1) (deeming only authorized between cohabiting spouses). The Secretary must take this reality into account.

## C. New York Law

■ While it may not be decisive in interpreting a federal statute—a matter we need not now decide—the New York banking law suggests a standardized approach to availability in the context of a joint banking arrangement. The law of New York State limits the ownership of funds deposited to a joint account so that, ordinarily, only one-half of the money so deposited belongs to each of two tenants.

Section 675(a) of the New York Banking Law authorizes banking institutions to deliver all money held in a joint account to either owner until the bank receives notice to the contrary. While this law absolves the bank from any liability when one of the owners improperly withdraws money from the account, the New York courts have recognized that an owner may be liable to his cotenant for money withdrawn in excess of the former's share. "The law is well-settled that upon the creation of a joint account, the joint tenants are presumptive one-half owners of the funds deposited therein ... and the burden is upon the party challenging it to rebut the presumption." *Zagoreos v. Zagoreos*, 81 A.D.2d 890, 439 N.Y.S.2d 155, 156 (2d Dept. 1981). "Each [party] is entitled to a moiety beyond which he may not, without consent, withdraw funds for his own use or purpose." *Walsh v. Walsh*, 29 A.D.2d 991, 290 N.Y.S.2d 115, 117 (2d Dept.1968). *Compare* 26 U.S.C. § 2040(b) (1976 and Supp.) (where a joint bank account is held in the name of husband and wife, one-half the account is includible in the estate of the decedent spouse regardless of who owned the funds).

*Coughlin v. Commissioner of Social Services*, 75 A.D.2d 895, 428 N.Y.S.2d 291 (2d Dept.1980), is of particular interest. An applicant for medical assistance was deemed ineligible because of excess resources. The State Commissioner of Social Services had attributed to her all the money contained in a joint bank account of which her nephew was a joint tenant. All the funds deposited to the account had been placed there by the applicant, and it was she who paid all taxes on the account. Sometime prior to her application, the nephew had withdrawn $20,000, which the State construed as a transfer made in order to render the applicant eligible for medical assistance. The Appellate Division reversed, holding that the State had not overcome the joint tenancy presumption. There was no evidence to show that the applicant did not intend to confer a beneficial one-half interest in the account on her nephew at the time of its creation.

## D. Restrictions on Secretary

■ The requirement of actual availability of income imputed to an SSI claimant gives rise to restrictions on the extent to which the Secretary may attribute deposits to a joint bank account as income to a co-owning claimant. The Secretary must consider the needs of the ineligible cotenant who may have to draw on the account for his basic requirements of food, clothing and shelter. To the extent that the cotenant has need of funds in the account reasonably deemed to be his and did not intend those funds as a gift to the SSI claimant, the Secretary may not attribute the funds to the claimant.

■ The Secretary cannot be expected to make an individualized determination of the ineligible cotenant's needs in each instance. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460 (1981) ("To require individual determinations of need would mandate costly factfinding procedures that would dissipate resources that could have been spent on the needy"). But this does not relieve him of the duty of establishing a reasonable standard allowance if he wishes

to avoid ad hoc determinations of need. *See Brown v. Smith,* 662 F.2d 464 (7th Cir.1981). Methods of attribution other than that suggested by the New York presumption may well be acceptable.

### III. Conclusion

The case is remanded to the Secretary for a redetermination of the amount of funds in the joint account that were available to plaintiff and which may be imputed to her. The Clerk of the Court shall send a copy of this Memorandum and Order to all parties.

So ordered.