HARRY COLBY & another[1] *vs.* COMMISSIONER OF
PUBLIC WELFARE.

Franklin.  October 2, 1984. — November 15, 1984.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Medicaid. Declaratory Relief. Administrative Law,* Regulations, Notice.

The Department of Public Welfare correctly applied its financial responsi-
bility regulations in considering a husband's assets to be "mutually
available" to his wife and two minor children who lived in the same
household with him, and in determining that the wife and children were
not eligible for Medicaid payments until they incurred medical expenses
in a specified amount. [772]
A husband and wife who demonstrated that they were entitled to apply for
Medicaid as two separate assistance units and that, if they did so, the
Department of Public Welfare would apply its policy of "deeming" (i.e.,
considering one individual's income as available to another) so as to
affect adversely their Medicaid eligibility presented circumstances ap-
propriate for a judicial declaration as to the lawfulness of the department's
"deeming" policy. [773-774]
A "deeming" policy of the Department of Public Welfare, under which
applicants for medical assistance payments who seek benefits as separate
assistance units are required to be responsible for their spouses and
dependent children to the same extent as applicants who apply for benefits
as a single assistance unit, was neither unreasonable nor in conflict with
Federal law. [774-778]
Published notice of a proposed amendment to regulations of the Department
of Public Welfare governing financial responsibility and choice of med-
ical assistance category satisfied the requirement of G. L. c. 30A, § 3,
that such notice "either state the express terms or describe the substance
of the proposed action." [779-780]
An amendment to a regulation of the Department of Public Welfare, when
considered in its context, gave adequate notice of how the department's
"deeming" policy would be applied to families seeking medical assistance
payments as two separate assistance units. [780-781]

---

[1] His wife Lila Colby.

CIVIL ACTION commenced in the Superior Court Department on May 13, 1983.

The case was heard by *John F. Murphy, Jr.*, J.

*J. Paterson Rae* for the plaintiffs.

*Carolyn V. Wood*, Assistant Attorney General, for the defendant.

GREANEY, C.J. To resolve this appeal, we are required to explore the complexities of medicaid regulations, State and Federal. In particular, we examine "deeming" procedures. We conclude: (1) that a decision by a referee of the Department of Public Welfare (department) denying Lila Colby and her two children medicaid eligibility for the period between April 1, 1983, and September 30, 1983, until they had incurred medical expenses in excess of $1,722.96, was correct, and (2) that the department's deeming policy as expressed in 106 Code Mass. Regs. § 505.460 (1983), and as applied to the Colby family, is in compliance with Federal law.

1. *Background: the operation of the medicaid program.* Title XIX of the Social Security Act of 1965, 42 U.S.C. §§ 1396 et seq. (Supp. V 1975), creates a cooperative Federal-State medical assistance program to enable States to furnish medical assistance to families with dependent children and to aged, blind or disabled individuals who have insufficient income and resources to meet the costs of necessary medical services. 42 U.S.C. § 1396(1) (1982). If a State chooses to participate in the medicaid program, it must meet all the requirements of the Social Security Act and of regulations promulgated by the Federal Department of Health and Human Services (HHS). 42 U.S.C. §§ 1396, 1396a (1982). 42 C.F.R. § 435.10 (1983).

With respect to these requirements, the Federal program distinguishes two groups of medicaid recipients. A participating State must provide medical assistance to the "categorically needy" (42 C.F.R. § 435.4 [1983]), namely those individuals and families whose level of income and resources are low enough to qualify them for cash assistance under the Supplemental Security Income (SSI) Program or under the Aid to Families with Dependent Children (AFDC) Program. 42 U.S.C. § 1396a(a)(10)(A) (1982). Pursuant to 42 U.S.C.

§ 1396a(a)(10)(C) (1982), a State may also provide medical assistance to the "medically needy" (42 C.F.R. § 435.4 [1983]), namely those individuals or families whose levels of income are too low to cover all the costs of medical care but too high to qualify them for cash grants under the SSI or AFDC programs (the SSI medically needy and the AFDC medically needy).

Under the Massachusetts medicaid program, administered by the department, medical assistance is furnished to the categorically needy (as required) and the medically needy (as permitted). To obtain medicaid, a medically needy person must have income and resources within the limits of the State's medical assistance plan. 42 C.F.R. § 435.4 (1983). Those who have income greater than the allowable level may nonetheless become eligible when they incur medical bills equal to the amount of income that exceeds the medicaid level. 42 C.F.R. § 435.831(d) (1983). The amount of medical bills that must be incurred prior to attaining eligibility is known as a "spend-down."

In determining eligibility for medicaid, the Social Security Act requires States to base assessments of financial need only on "such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B) (1982). The State agency administering the program locally must employ reasonable standards and methodologies to evaluate income. 42 U.S.C. § 1396a(a)(17)(C) (1982). Eligibility decisions may not take into account the financial responsibility of any individual for any applicant or recipient of assistance unless the applicant or recipient is the individual's spouse or child. 42 U.S.C. § 1396a(a)(17)(D) (1982).

Federal regulations also permit the State to consider income and resources of spouse or parents as available to a medically needy applicant or recipient even if they are not actually contributed. 42 C.F.R. §§ 435.821(c), 435.822(b)(2) (1983). The department has promulgated regulations which provide that, when a child under eighteen resides with a parent, the assets and income of the parent are considered available to the child

irrespective of whether they are actually contributed to the child's support. 106 Code Mass. Regs. § 505.410(A)(1) (1983). Additionally, each spouse has financial responsibility for the other, and when spouses reside together, the assets and income of each spouse are considered mutually available, whether or not actually contributed. 106 Code Mass. Regs. § 505.450(A)(1) (1983). Consideration of one individual's income as available to another is referred to as "deeming."

If a medically needy individual is eligible for medicaid under more than one category, Federal and State law permit the individual to have his eligibility determined under the category he selects. 42 C.F.R. § 435.404 (1983). 106 Code Mass. Regs. § 505.460 (1983).[2] Until 1983, when an individual who was eligible as either SSI or AFDC medically needy chose to have his eligibility determined under the SSI category, the department split the family's income between the two separate assistance units and compared the total income of each unit to the medicaid income standard without "deeming."

In March, 1983, however, the department amended § 505.460, the "choice of category" regulation, to provide that "assets and income shall be considered in accordance with the regulations for financial responsibility." Pursuant to the amended regulation, the department now "deems" the income of an SSI medically needy applicant to his AFDC medically needy family if the applicant and his family reside in the same household, even if both apply as separate assistance units. It is the application of the department's "deeming" regulations to the plaintiffs' February, 1983, medicaid eligibility redetermination which is at issue here.

2. *The Colbys' situation.* Harry Colby is a disabled veteran who resides with his wife, Lila Colby, and their two minor

---

[2] The Federal regulation provides, in relevant part, "The [State] agency must allow an individual who would be eligible under more than one category to have his eligibility determined for the category he selects." The counterpart State regulation provides, "The individual or family may select the composition and categorical relatedness of the assistance unit for which he wants to be considered, and the worker shall explain the options available to him."

children. The family's sole source of income is a Veterans' Administration disability pension which Mr. Colby receives in the amount of $732.16 per month. Mr. Colby received SSI benefits which rendered him automatically eligible for medicaid until 1979, when cost of living increases in his veterans' pension placed him over income for SSI. When Mr. Colby received SSI, his wife and children were also eligible for and received medicaid as a separate assistance unit, without having Mr. Colby's income deemed to them. 106 Code Mass. Regs. § 505.430(A) and (B) (1983).

When Mr. Colby was terminated from SSI, he applied for medicaid based upon his disability, while his wife and children continued to apply for medicaid separately. Prior to February, 1983, the department continued to split the family's income into two separate units, with no deeming of income between the two. Based upon a breakdown of Mr. Colby's veterans' pension, approximately $440 was apportioned to him, 137.76 to his wife, and 75.20 to each child. Pursuant to that method of determining eligibility, Mr. Colby was eligible for medicaid with a monthly spend-down of $91, while his wife and two children were eligible for medicaid without any spend-down.

In February, 1983, the Colbys' medicaid eligibility was re-determined for the period of April 1 to September 30, 1983. The department made its determination by "deeming" all of Mr. Colby's income as available to his spouse and children pursuant to 106 Code Mass. Regs. §§ 505.410 and 505.450. On February 15, 1983, the department notified Mrs. Colby that she was not immediately eligible for medical assistance for the six-month period beginning April 1, 1983, but that if she incurred medical bills of $1,722.96 in that six-month period, she would be eligible to have medical bills which exceeded this amount paid. Mrs. Colby appealed the termination decision, and a fair hearing was held by a department referee on March 21, 1983. On April 14, 1983, the referee rendered a decision affirming the termination. The plaintiffs then commenced this action in the Superior Court seeking judicial review of the decision pursuant to G. L. c. 30A, § 14, and a declaration under G. L. c. 231A that the department's revised deeming policy was invalid.

3. *The department's decision.* The department correctly deemed Mr. Colby's income to his wife and his dependent children based upon the regulatory scheme in existence prior to the amendment of § 505.460. It is undisputed that Mr. Colby did not apply separately for medicaid in February, 1983 (for the period April 1, 1983, through September 30, 1983); that he did not attempt to exercise his "choice of category" option;[3] and that no double counting of his income in fact took place.[4] Based upon the single medicaid application before the department (on behalf of Mrs. Colby and the two minors) the department correctly applied the financial responsibility regulations, §§ 505.410(A)(1) and 505.450(A)(1), and considered Mr. Colby's income and assets to be "mutually available" to his spouse and minor children. Thus the department's determination of Mrs. Colby's eligibility was proper irrespective of the changes in deeming policies for families applying for medicaid as two separate assistance units.[5]

---

[3] At the fair hearing, Mr. Colby testified that he withdrew his application because he was not willing to go through all the medical tests which were required for the redetermination. Later, when asked if he would be willing to apply if that became a condition of his wife's eligibility, Mr. Colby indicated that he would be willing to retake the medical tests. The hearings officer and the court below apparently proceeded on the assumption that Mr. Colby would be willing to apply separately for medicaid if that would make his wife and his children eligible. However, we must confine our review of the department's eligibility determination to the facts as the record discloses them, and those facts indicate that the department had before it only one application for medicaid from the Colby family on behalf of Mrs. Colby and the two minor children. Our analysis differs from the analysis of the judge below, who assumed that the Colby family had in fact applied for medicaid as two separate assistance units and that the department had applied its new "deeming" policy. Review of the legal soundness of the agency decision under c. 30A, § 14, is, however, an appellate court function and does not require adherence to the rationale used by the trial court.

[4] "Double counting" of income would inevitably result from application of the financial responsibility regulations to families which apply for medicaid as two separate assistance units. For example, in this case, Mr. Colby's income would be counted once in determining his own SSI related medicaid eligibility, and again in determining his family's AFDC related medicaid eligibility.

[5] The plaintiffs concede, as they must, that the department has the right to deem the income of one spouse to another or to their children. The practice

4. *The new deeming policy.* Although the department's new deeming policy, as reflected in § 505.460, is not pertinent to our review under c. 30A, § 14, of the department's decision on Mrs. Colby's application, we believe it appropriate to pass on the plaintiffs' request for declaratory relief. General Laws c. 30A, § 7, as appearing in St. 1974, c. 361, § 3, provides (in relevant part) that "judicial review of any [agency] regulation . . . may be had through an action for declaratory relief in the manner and to the extent provided under [c. 231A]." "In order for a declaratory judgment to issue under G. L. c. 231A, the plaintiff must demonstrate that an actual controversy exists and that he has legal standing to sue. . . . An actual controversy within the meaning of G. L. c. 231A, § 1, is a 'real dispute' caused by the assertion by one party of a duty, right, or other legal relation in which he had a 'definite interest,' in circumstances indicating that failure to resolve the conflict will almost inevitably lead to litigation. . . . An actual controversy can exist whether or not the plaintiff's rights have already been impaired" (citations omitted). *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 659 (1980), and cases cited. The plaintiffs have shown that they are entitled to apply for medicaid as two separate assistance units, that if they do so the department will apply its new deeming policy

of interspousal deeming has been upheld by the United States Supreme Court even when the spouses are not living together. *Schweiker* v. *Gray Panthers,* 453 U.S. 34 (1981). The plaintiffs likewise correctly do not press the argument that the department must treat the SSI medically needy person's income as "invisible" in determining his family's AFDC medically needy eligibility. Although Federal law requires the department to ignore the presence of any SSI *recipient* in determining the eligibility of his family for AFDC, 42 U.S.C. § 602(a)(24) (1982), there is no similar requirement that this exclusion be applied to SSI medically needy individuals. See *Calkins* v. *Blum,* 511 F. Supp. 1073, 1096 (N.D.N.Y. 1981), aff'd, 675 F.2d 44 (2d Cir. 1982). An SSI recipient's exemption from his family's medicaid eligibility determination is offset by a reduction in SSI benefits for an SSI recipient who resides with an AFDC recipient, 42 U.S.C. § 1382c(f) (1982). See *Calkins* v. *Blum,* 511 F. Supp. at 1096. Legislative history indicates that Congress intended to treat the categorically needy differently from the medically needy. It is therefore reasonable to consider the income of SSI medically needy applicants in determining their families' AFDC related eligibility. *Id.* at 1098.

to them, and that the policy will adversely affect their medicaid eligibility. If a situation testing the regulation does not present itself with the Colby family, it will very likely soon arise through another application. The question of the validity of the department's deeming policy is of public importance and the issue has been fully briefed. In these circumstances, the plaintiffs should not be required to await a denial of eligibility from the department before obtaining declaratory relief. See *Stop & Shop Companies, Inc.* v. *Board of Registration in Pharmacy*, 15 Mass. App. Ct. 1005, 1006 (1983).

We turn to the question of the propriety of the department's new deeming policy. The plaintiffs raise two main challenges to the practice: (1) that the new deeming policy violates Federal requirements that the State employ "reasonable" standards and methodologies to evaluate the available income and resources of medicaid applicants, 42 U.S.C. § 1396a(a)(17)(C) (1982), and (2) that the policy violates Federal and State regulations which permit medicaid applicants to choose the category under which their eligibility will be determined.

In evaluating reasonableness, we start with certain basic premises. First, the definition of "available" income found in the Federal regulations has the force of statute because Congress has explicitly delegated authority to the Secretary of HHS to define the term "available". See *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 44 (1981). Second, Federal regulations explicitly authorize the States to consider the income and resources of a spouse or parent as "available" to a medically needy recipient even if they are not actually contributed. 42 C.F.R. §§ 435.821(c), 435.822(b)(2) (1983). Third, the State regulations which require interspousal and parent-child deeming when the family resides in the same household are fully authorized by Federal regulations and carry a presumption of validity. Indeed, "from the beginning of the Medicaid program, Congress authorized States to presume spousal support." *Schweiker*, 453 U.S. at 44.

The plaintiffs concede the validity of interspousal deeming, see note 6, *infra*, but argue that it is unreasonable to deem all of the income of one spouse to another, without excluding a

sufficient amount for the living expenses of the contributing spouse. Their argument, however, initially overlooks the fundamental differences between families who are living together and those who are living separately.[6] Where one spouse is institutionalized it is appropriate to allow the contributing spouse to retain sufficient resources to maintain a separate household because the spouse in fact has living expenses independent of his family at home. See *Schweiker*, 453 U.S. at 47-48. By contrast, however, where the family resides in the same household, as here, they are to be considered a single economic unit with mutually available assets and income, and it is appropriate to deem the entire income of one spouse to the other spouse and dependent children. See *Calkins* v. *Blum*, 511 F. Supp. 1073, 1096-1098 (N.D.N.Y. 1981), affd., 675 F.2d 44 (2d Cir. 1982).[7] As noted in *Calkins*, 511 F. Supp. at 1098, in the absence of any clear statutory or regulatory language to the contrary (and we can find none), it is reasonable to require the income of a SSI medically needy person who is not a recipient of SSI Federal assistance to be made available to his AFDC medically needy family.

The plaintiffs point out, however, that when a family is divided into two separate assistance units, deeming will inevi-

[6] The cases upon which the plaintiffs rely to support their argument are inapposite because they involve deeming between spouses who do not reside in the same household or are otherwise ineligible for assistance. See e.g., *Norman* v. *St. Clair*, 610 F.2d 1228, 1241-1242 (5th Cir. 1980) (ineligible spouse receives standard living deduction); *Brown* v. *Smith*, 662 F.2d 464, 466, 468-69 (7th Cir. 1981) (where one spouse is institutionalized, other spouse receives standard deduction); *Rosenfeld* v. *Secretary of Health & Human Services*, 563 F. Supp. 1192, 1195 (E.D.N.Y. 1983) (where one spouse is institutionalized, it is unreasonable to deem entire joint bank account to other spouse).

[7] Federal regulations explicitly recognize the distinction between spouses who live together and those who reside separately, requiring deeming in the former instance, but placing restrictions on deeming in the latter case. See, e.g., 42 C.F.R. §§ 435.712, 435.723, 435.734 (1983). Parallel State regulations also recognize this distinction, deeming all of a spouse's income as available when the family lives together, but providing for an exemption equal to the medically needy income level when the spouse or parent does not live in the same household with his family. 106 Code Mass. Regs. § 506.300(A) (1983).

tably result in some double counting (see note 5, *supra*) of the spouses' incomes. They argue that double counting is unreasonable because it violates the "choice of category" requirements of Federal law by eliminating the intended benefit of choosing one's eligibility category. We disagree.

The Federal regulation in question does require the department to "allow an individual who would be eligible under more than one category to have his eligibility determined for the category he selects." 42 C.F.R. § 435.404 (1983). On its face, the regulation is intended to inure only to the benefit of an individual applicant, and has no application to his family. See *Calkins* v. *Blum*, 511 F. Supp. at 1097. The regulation thus is not directly concerned with families which apply as two separate assistance units or with the application of deeming to those families. The "choice of category" regulation simply permits an SSI medically needy applicant like Mr. Colby to choose the benefit of more liberal SSI earned income disregards in determining his own eligibility for, and amount of, medicaid benefits. *Ibid.* The plaintiffs have not shown, and we have not discovered, any legislative intent to benefit at the same time both the individual and his AFDC-related family unit by increasing their benefits as a result of each being evaluated as separate assistance units. Under the challenged regulation, Mr. Colby is entitled to apply for medicaid as a separate SSI-related assistance unit and to receive the benefits of the SSI budgeting methodology. That is simply *all* that is required by Federal and State choice of category regulations.

In evaluating the soundness of the plaintiffs' double-counting argument, it is also helpful to look at each of their medicaid applications separately. When Mrs. Colby and the two children apply for medicaid as an AFDC-related assistance unit, Mr. Colby's income is deemed to be available to them because they reside in the same household. Likewise, when Mr. Colby applies for medicaid as an SSI related assistance unit, his wife's income is deemed to be available to him. Her income is compared to the income standard for a family of three, and his income is compared to the income standard for one person. So viewed, the concept of double counting is something of a

misnomer. A more realistic view is that each separate assistance unit is deemed to have available the income of both spouses who reside together in the same household. This assumption stems from Congress' explicit directive that States presume spousal support, *Schweiker*, 453 U.S. at 44, and is conceptually analogous to considering a family living together as having available as joint assets their furniture, appliances, and the family automobile.

It therefore becomes apparent that the plaintiffs' real concern centers on the loss of double benefits which they received prior to the amendment of § 505.460. Because of the "economy of scale" built into the medicaid income standards, a family which applied as two separate assistance units received a much larger income exemption than a family which applied as one assistance unit.[8] The splitting of income between the units without deeming, combined with the larger income exemption, resulted in much more favorable treatment for certain families which applied as two separate assistance units.[9] This disparity, however, bears no logical relationship to the advantages conferred by SSI budgeting methodology, which is the intended benefit of the choice of category regulation.[10] *Calkins* v. *Blum*, 511

---

[8] In the parlance of welfare benefits, "economy of scale" is achieved by granting a large initial exemption for a unit of one, with smaller and varying increments as the number of persons in the household increases. A unit of one is entitled to an initial exemption of $333, while three persons are entitled to an exemption of $435, and four persons are entitled to an exemption of $445.

[9] For example, in this case, by applying as separate assistance units, Mr. Colby would have been eligible for benefits with a six-month spend-down of only $546, while Mrs. Colby and the children would have been eligible with no spend-down. Any other family of four which filed as a single assistance unit would have a six-month spend-down of $1,722.

[10] The benefit of SSI budgeting methodology arises from the generous earned income deductions, which are more favorable than the AFDC deductions which must be used in determining eligibility for medicaid under the AFDC-related category. See *Calkins* v. *Blum*, 511 F. Supp. at 1097. This methodology does not benefit Mr. Colby, because he has no earned income, but it still may benefit certain SSI medically needy individuals who are employed part-time. Additionally, single parents who qualify for either AFDC medically needy or SSI medically needy categories may benefit from filing as separate assistance units because their children's income cannot be deemed to them.

F. Supp. at 1097. Under the amended State regulation, families which apply as separate assistance units will still receive the benefit of the larger income exemption, and the SSI-related unit will also receive the benefit of SSI budgeting methodology. The only change is that these benefits may be offset by the effect of deeming, which may make it more beneficial for certain families to apply as a single assistance unit rather than to exercise their choice of category option.[11] The key point, however, is that Federal law does not dictate which category should be more beneficial to applicants. It simply requires that they be permitted to choose the more beneficial category.

We conclude that under the prior system the plaintiffs received benefits which were not required by Federal law and which are contrary to the legislative presumption of interspousal and parental support. We think the department can properly require applicants who apply for benefits as separate assistance units to be financially responsible for their spouses and dependent children to the same extent as applicants who choose to apply for benefits as a single assistance unit. Based upon the considerations discussed, we are satisfied that the department's new deeming policy is reasonable and not in conflict with Federal law.[12]

---

[11] This point may be illustrated by application to the Colby family. If they applied as separate assistance units, the Colbys would receive a $768 income exemption ($333 for Mr. Colby and $435 for his wife and the children), whereas if they applied as a single assistance unit, they would receive only a $445 exemption (for a family of four). However, because Mr. Colby's income would be deemed as available to his family, they would have a six-month spend-down of $1,722, just like any other family of four which filed for medicaid as a single assistance unit. Under the old policy, where none of Mr. Colby's income was deemed as available to his wife and the children, they were eligible for medicaid with no spend-down. Likewise, because Mrs. Colby's portion of the income would be deemed as available to her husband, he would have a larger six month spend-down under the amended regulation than he had before the department instituted its new deeming policy. However, if Mr. Colby's income were earned rather than unearned, he still might benefit from applying as a separate assistance unit. Of course, if Mr. Colby later qualifies and receives SSI again, he and the family will be able to apply under the prior practice.

[12] The fact that the department could have treated a spouse who applies separately in the same category as an institutionalized or ineligible spouse

5. *Claims of procedural invalidity.* The plaintiffs' final argument is that the amendment to § 505.460 violates the notice requirements of the State Administrative Procedure Act, G. L. c. 30A, § 3.[13] The contention has two prongs: (1) that the notice in the Massachusetts Register announcing the amendment of the regulation was defective because it did not specify which regulation would be amended; and (2) that the language of the amendment is too vague to give adequate notice of the change in deeming policy.

As to the first issue, the notice published in the Massachusetts Register advised of a proposed amendment to regulations regarding the medical assistance program and contained nearly the full text of the amendment. General Laws c. 30A, § 3, as appearing in St. 1976, c. 459, § 3, requires that the notice must "either state the express terms or describe the substance of the proposed action." The notice here satisfied that requirement.

Moreover, cases decided under the counterpart provisions of the Federal Administrative Procedure Act indicate that the notice provisions are designed to assure fairness and mature consideration of rules of general application. See *du Pont de Nemours & Co.* v. *Train*, 541 F.2d 1018, 1026 (4th Cir. 1976), and cases cited. Notice is sufficient if it describes the subject matter and issues involved and affords interested parties a reasonable opportunity to participate in the rule making process. *Ibid.* See also *South Carolina ex rel. Tindal* v. *Block*, 717 F.2d 874, 885 (4th Cir. 1983), and cases cited. Although the

---

does not make the amended regulation unreasonable. It is not a court's function to determine the most rational means for the department to achieve its goals. Rather, the plaintiffs have the heavy burden of showing that there is no conceivable ground on which the regulation may be upheld, see *American Family Life Assur. Co.* v. *Commissioner of Insurance*, 388 Mass. 468, 478 (1983), or that it conflicts with Federal law. This they have not done.

[13] Since we have held that the amended regulation was not applicable to the plaintiffs' February, 1983, medicaid application, we need not reach the plaintiffs' further argument that the department applied the regulation to them prematurely. It is undisputed that the department, after notice, followed the appropriate procedural steps required by G. L. c. 30A, § 3, for adoption of a regulation. Thus, if the notice was not defective, the regulation became effective on March 10, 1983.

notice here failed to give the number of the regulation which it proposed to amend, it did clearly indicate that medicaid regulations governing financial responsibility and choice of category were involved. It also gave interested parties the opportunity to obtain a current draft of the proposed actions by requesting a copy in writing from the department's information office. We think this was sufficient to give interested parties a reasonable opportunity to know what was involved and to participate in the rule making process.

As to the second issue, we reject the argument that the amended regulation is too vague to give adequate notice of the department's new deeming policy.[14] On its face, the amended regulation may not precisely explain how financial responsibility applies to families which apply as separate assistance units. If one refers to §§ 505.400 through 505.450, of the regulations, however, there is only one plausible way to interpret the amendment. These sections: (a) provide that some individuals have financial responsibility for others and must be included in the filing unit even if they are not a part of the assistance unit, see 106 Code Mass. Regs. 505.400 (1983), and that assets and income of all members of the filing unit must be considered when determining eligibility, *ibid*; and (b) delineate the applicable financial responsibility rules for various types of family arrangements. These regulations make it reasonably clear that parents or spouses residing with their families must be included in the filing unit, whether or not they are included in the assist-

---

[14] In its entirety, 106 Code Mass. Regs. 505.460 (amended on March 10, 1983), provides as follows: *"505.460: Selection of the Assistance Unit*

"Under certain circumstances, an individual or family may be considered for eligibility in more than one assistance unit or category of assistance (i.e., AFDC-Related, SSI-Related, and/or MA-Under 21).

"The individual or family may select the composition and categorical relatedness of the assistance unit for which he wants to be considered, and the worker shall explain the options available to him.

"Assets and income shall be considered in accordance with the regulations for financial responsibility in Sections 505.400 through 505.450, appropriate to the composition and categorical relatedness of the assistance unit selected."

ance unit. Viewed in this context, § 505.460 gives adequate notice of how the department will apply its deeming policy to families which apply as two separate assistance units. We conclude that the notice requirements of G. L. c. 30A, § 3, have not been violated.[15]

*Judgment affirmed.*

[15] Even assuming that the plaintiffs had a valid claim that the regulation was vague in March, 1983, that claim would now be moot in light of the subsequent adjudication and publication of a revised policy manual. Ambiguities in regulations may be clarified by resort to the administrative process so as to cure a vagueness claim. *Brookline* v. *Commissioner of Environmental Quality Engr.*, 387 Mass. 372, 378 (1982). The department has clarified any ambiguities in the application of its deeming policy in this area. *Ibid.* See *Arthurs* v. *Board of Registration of Medicine*, 383 Mass. 299, 312-313 (1981). In addition, it has published a revised policy manual which explains how the deeming policy applies in specific situations. An administrative agency may fill in the details of an established policy without repeating the steps required for promulgation of a regulation. See *Atlas Distributing Co.* v. *Alcoholic Beverages Control Commn.*, 354 Mass. 408, 414 (1968); *Massachusetts Gen. Hosp.* v. *Rate Setting Commn.*, 371 Mass. 705, 706-707 (1977).