**Ksiel BUCHBINDER, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

No. 86 Civ. 7745 (WCC).

United States District Court, S.D. New York.

March 15, 1989.

Samuel Leigh, Great Neck, N.Y., for plaintiff.

Benito Romano, U.S. Atty., S.D.N.Y., New York City (Kathleen A. Zebrowski, Sp. Asst. U.S. Atty., of counsel), Annette H. Blum, Chief Counsel, Region II, Office of the General Counsel, Dept. of Health and Human Services (Peter G. O'Malley, Asst. Regional Counsel, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Ksiel Buchbinder ("Buchbinder") brought this action under Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of a final determination of the Secretary of Health and Human Services (the "Secretary"). The Secretary determined that plaintiff was overpaid $4,387.36 in Supplemental Security Income ("SSI") benefits and that plaintiff is not entitled to a waiver of recovery of the overpayment.

The action is before the Court on defendant's motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.

Defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff was born on October 15, 1909, and has received SSI benefits for seven or eight years based on age. On November 8, 1985, plaintiff signed a statement that he "had up to $2,600" in a Chemical Bank account "from a gift of $3,000" received in February, 1984. Buchbinder affirmed that he "used this money to make a trip to Argentina in [December, 1984] and to make a trip to Poland in [June, 1985]." Administrative Record at 46.[1]

On January 6, 1986, the Secretary notified plaintiff that he had received $4,387.36 in excess SSI payments. The notice indicated that Buchbinder was not entitled to SSI from March through December, 1984 because he "received $3,000 cash" in February, 1984, and that from May through September, 1985, Buchbinder received benefits as though he was "living alone" while he was actually "living with his wife." Administrative Record at 38.

On January 24, 1986, Buchbinder requested a hearing to contest the determination of an overpayment. Plaintiff explained that the $3,000 "was given to me for the sole purpose of finding the next of kin of my deceased nephew, Fred Buchbinder who passed away on [February 15, 1984]. My nephew's girlfriend gave me the $3,000 to cover my travel expenses to locate his next of kin living in Argentina and Poland because they were mention[ed] in his last will and testament." Buchbinder added that "I did not live with my wife during the period [May, 1985 to September, 1985]. I lived alone then and now." Administrative Record at 42–44.

Plaintiff received a notice of hearing around March 5, 1986. The notice indicated that the hearing would concern "whether or not the claimant's resources exceeded the $1,500.00 limit from March 1984 through December 1984." Administrative Record at 17.

---

1. "Administrative Record" refers to the transcript and record of the administrative proceedings submitted by defendant with its answer.

A hearing was held on April 22, 1986 before Administrative Law Judge Michael Friedman (the "ALJ"). At the hearing, Buchbinder testified, through a Spanish interpreter, that the $3,000 was not given to him for his personal use. He explained that Elaine Owen ("Owen"), his nephew's "girlfriend," gave him the advance to cover his expenses in locating his nephew's heirs in Poland and Argentina. Apparently, Buchbinder was unable to contact these people through the American Embassies. Administrative Record at 26. So, after spending nine months locating the relatives, *id.* at 29, plaintiff attempted to visit them in person. Plaintiff traveled to Poland in December, 1984 and Argentina in May, 1985. He testified that he never intended to "live on" the $3,000 or spend it for his "personal use." *Id.* at 29. The funds were used to pay for "expenses to search for the heirs of Fred." *Id.* at 30. His testimony was corroborated by the notarized statement of Janet Ingoglia, Owen's sister: "I witnessed the money exchange of $3,000.00 between Ksiel Buchbinder and my sister Elaine Owen in March of 1984. This money was for family business and not for Mr. Buchbinder's personal use." *Id.* at 57. Buchbinder also produced his passport which indicated that he traveled to Poland and Argentina on the dates in question. *Id.* at 59–63.

Plaintiff testified that he "never lived" with his wife. Administrative Record at 30. Buchbinder admitted that he "was married on April 24, 1985." *Id.* at 31. At that time, plaintiff lived in "a beautiful room" which he had been renting for four years in Manhattan at 231 West 96th Street. *Id.* at 31–32. His wife was then living in Brooklyn with her sister. Buchbinder inquired as to whether his wife would be allowed to move in with him, but discovered that his building was only for men. *Id.* at 32. Before the marriage, plaintiff's fiancé, Marsel Romov ("Marsel"), found a small furnished room in a basement in Brooklyn. *Id.* at 34–35. Marsel "never told [Buchbinder] the kind of room she was renting," and Buchbinder never saw it. *Id.* at 35. Plaintiff signed the lease as a co-tenant with Marsel, *Id.* at

49–50, but he did not contribute to the rent, and refused to live there. *Id.* at 33. Buchbinder testified that his diabetes made it impossible for him to move to Brooklyn. *Id.* at 34. Moreover, Buchbinder preferred to remain in the familiar surroundings of Manhattan. He testified: "I don't know anybody in Brooklyn. I know [sic] a friend in Brooklyn, have nothing.... She has the family in Brooklyn." *Id.* at 35. Apparently, Buchbinder's refusal to move to Brooklyn with his wife resulted in considerable friction for the couple. *Id.* at 35.

On May 7, 1986, the ALJ ruled that Buchbinder was overpaid benefits in the sum of $4,387.36, and that the Secretary had not waived recovery of the overpayment. Administrative Record at 10–14. The ALJ noted that there was "no written agreement" regarding Buchbinder's use of the $3,000. He concluded that the funds "represented a resource to the claimant" since Buchbinder "had absolute ownership and was able to use the funds in any way he saw fit." *Id.* at 12–13.

The ALJ found Buchbinder's testimony that he did not live with his wife "not credible." Specifically, the ALJ rejected Buchbinder's assertion that "sickness" prevented him from moving to Brooklyn in April, 1985, in light of the fact that plaintiff traveled to Poland around that time. Relying on the "lease signed by the claimant indicating that he and his wife were renting a room starting May 1, 1985," the ALJ concluded that Buchbinder lived with his wife during the relevant time period. Administrative Record at 13.

The Appeals Council denied plaintiff's request for review of the ALJ's decision on August 5, 1986. Administrative Record at 2. Buchbinder thereafter commenced this action.

## DISCUSSION

### *The Scope of Review*

The Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 1383(c)(3); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.

1420, 1427, 28 L.Ed.2d 842 (1971); *Donato v. Secretary of Health and Human Services*, 721 F.2d 414, 418 (2d Cir.1983). "Substantial evidence" means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). The Secretary's findings will not be rejected just because there is also substantial evidence supporting plaintiff's position, *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982), or because the reviewing court's independent analysis of the evidence differs from the Secretary's analysis, *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980) (plaintiff is not entitled to a *de novo* review of the Secretary's findings).

*Excess Income and Resources*

■■■ The ALJ found that "the $3,000.00 the claimant received in February 1984 represented income for the month of February 1984 and a resource starting in March 1984." Administrative Record at 12. His conclusion is based on an incorrect interpretation of the Act. Funds held pursuant to an oral agreement to use them for the benefit of others cannot be characterized as "income" or "resources" within the meaning of 42 U.S.C. § 1382a(a)(1).

The Secretary argues that the ALJ did not believe Buchbinder's testimony on this issue, and that his finding is supported by substantial evidence. Specifically, the Secretary submits that "[s]ince plaintiff said that he had relatives in [Argentina and Poland], he could have gone for any number of reasons other than the alleged reason of locating Fred Buchbinder's heirs." Government's Brief at 12. The ALJ never made such a finding nor otherwise suggested that Buchbinder's testimony on this is-

sue was not worthy of belief. The ALJ wrote:

> The facts in this case clearly show that the $3,000.00 the claimant received in February 1984 represented income for the month of February 1984 and a resource starting in March 1984. The claimant signed a statement on November 8, 1985 indicating that the $3,000.00 was a gift. Although he later maintained that the purpose of receiving any money was so he may take trips to Argentina and Poland the evidence revealed that the claimant kept the funds in his bank account for a nine month period before he made his trip to Argentina. It was not until 16 months after receiving the money did he go to Poland. There was no written agreement regarding his use of the funds. The claimant had absolute ownership and was able to use the funds in any way he saw fit. Consequently, the funds represented a resource to the claimant.

Administrative Record at 12–13.

The ALJ knew how to indicate that he did not believe a witness's testimony. Indeed, he described Buchbinder's statement that he never lived with his wife as "not credible." Administrative Record at 13. Moreover, nothing in the record supports the inference that Buchbinder was given the money for his personal use. Buchbinder's testimony that he promised to use the money to search for Fred Buchbinder's heirs is corroborated by Janet Ingoglia who says that she witnessed the transaction and that the "money was for family business and not for Mr. Buchbinder's personal use." Administrative Record at 57.[2] It is further reinforced by the fact that the money was apparently used for that purpose.

In sum, the ALJ's conclusion, that Buchbinder and Owen's arrangement resulted in "income" and "resources," was based on his view of the law, not his opinion of Buchbinder's credibility. Therefore, I need not give his decision the deference accorded to findings of fact. *Townley v. Heckler,*

---

**2.** The ALJ did not mention Ingoglia's affidavit in his discussion of the evidence. The Secretary's papers erroneously assert that Ingoglia

"had no personal knowledge of the reason for the transfer." Government's Brief at 12.

748 F.2d 109, 112 (2d Cir.1984) (deferential standard of review is inapplicable to Secretary's conclusions of law).

To be eligible for SSI benefits, an individual must be aged, blind, or disabled as defined in Section 1614(a) of the Act. In addition, he must meet certain income and resource requirements. His "income" cannot exceed a rate of $1,752 a year and his "resources" cannot be greater than $1,500 at any time. 42 U.S.C. § 1382(a)(1). The Act does not define income and resources. Income is defined in the Secretary's regulations as "anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter." 20 C.F.R. § 416.1102. Resources are "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his support and maintenance." 20 C.F.R. § 415.1201(a).

Under the terms of Buchbinder's agreement with Owen, Buchbinder could not use the funds for his own support. Apparently, Owen wanted her boyfriend's relatives to be located. She gave Buchbinder the money with the understanding that it would be used for that purpose only. Since the funds could not be used for Buchbinder's maintenance, they were not "income" or "resources" within the meaning of the Act.

The ALJ found it significant that there "was no written agreement regarding [Buchbinder's] use of the funds." Administrative Record at 12. It is clear, however, that the arrangement involved here was a valid oral trust under New York law.[3]

A trust "arises where the legal and equitable or beneficial interests in specific property are vested in different individuals or sets of individuals." 61 N.Y.Jur. *Trusts* § 4 (1968). "There are four essential elements of a valid trust of personal property: (1) a designated beneficiary; (2) a designated trustee not the beneficiary; (3) a fund or other identifiable property; and (4) the ac-

tual delivery of the fund or other property to the trustee with the intention of passing legal title thereto to him as trustee...." *In re Estate of Fontanella*, 33 A.D.2d 29, 30, 304 N.Y.S.2d 829, 831 (3d Dep't 1969) (citing *Brown v. Spohr*, 180 N.Y. 201, 290, 73 N.E. 14, 16 (1904)); *accord* 61 N.Y.Jur. *Trusts* § 52. No particular formula of words is required to establish a trust. *Elyachar v. Gerel Corp.*, 583 F.Supp. 907, 922 (S.D.N.Y.1984); *Fontanella*, 33 A.D.2d at 30, 304 N.Y.S.2d at 831. Moreover, a writing is not required to create a trust in personal property, *Elyachar*, 583 F.Supp. at 922; *Fontanella*, 33 A.D.2d at 30, 304 N.Y.S.2d at 831, and, where all the other elements of a trust are satisfied, no consideration is required. 61 N.Y.Jur. *Trusts* § 64. While the trustee cannot be the sole beneficiary of a trust, the settlor may be a beneficiary. *See id.* § 80.

The facts found by the ALJ establish a valid trust. Owen, the settlor, delivered $3,000 to Buchbinder, the trustee, pursuant to an oral agreement that the money would be used to find her boyfriend's heirs. Fred Buchbinder's heirs were beneficiaries of the trust, as was Owen since she believed she would benefit if the relatives were located. While equitable title vested in Owen and the relatives, legal title shifted to Buchbinder. As the Government points out, "plaintiff had control over the account throughout its existence—he opened it, withdrew from it and closed it." Government's Brief at 13. Yet Buchbinder did not have "the authority and the power to use the funds for his support and maintenance," *id.*, since to do so would have been a breach of his fiduciary duty to Owen and the heirs.

In support of its contention that Buchbinder was not a mere trustee, the Secretary cites *Gordon v. Secretary of Health & Human Services*, 803 F.2d 1071 (9th Cir. 1986), *cert. denied*, — U.S. —, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). *Gordon* stands for the proposition that a revocable declaration in trust is too illusory to be recognized

---

**3.** In the absence of any contrary federal law, whether a particular asset can be used for a person's support and maintenance within the meaning of the Act is governed by state proper-

ty law. *Cannuni on Behalf of Cannuni v. Schweiker*, 740 F.2d 260, 264 (3d Cir.1984); *Rosenfeld v. Secretary of Health and Human Services*, 563 F.Supp. 1192, 1196 (E.D.N.Y.1983).

as a valid trust for SSI purposes. *Id.* at 1073; *c.f. Cannuni on Behalf of Cannuni v. Schweiker,* 740 F.2d 260, 264–65 (3d Cir. 1984) (Totten trust was not "resource" of beneficiary since settlor could terminate trust at will). The SSI recipient in *Gordon* was the director and sole member of an unincorporated association which held a bank account for charitable purposes. Noting that the recipient retained "the right and power to liquidate [the association's] resources as well as to amend its constitution to permit his personal use of the funds," *id.* at 1073, the *Gordon* court properly concluded that the account was part of the recipient's resources since he could use the money for his own support. Buchbinder, on the other hand, promised to use the $3,000 only to locate Fred Buchbinder's heirs. Therefore, the ALJ's conclusion that Buchbinder had "absolute ownership and was able to use the funds in any way he saw fit," Administrative Record 12–13, must be rejected.

The ALJ placed great emphasis on Buchbinder's characterization of the transaction as a "gift." Administrative Record at 12. Of course, a claimant's characterization of a transaction does not control its classification under federal law. Buchbinder may have considered the $3,000 a "gift" in the sense that it was "given" to him. Yet funds given with an understanding that they will be used for the benefit of others are not a "gift" within the meaning of 20 C.F.R. §§ 416 & 1121(g) since they cannot be used for the recipient's own support.

While the transaction involved here does not fall squarely within any of the Secretary's regulatory exclusions from income and resources,[4] the purposes served by those exclusions would be frustrated by a decision in the Secretary's favor. Funds held to cover business expenses, for example, are not considered income or resources under the Act. The regulations provide

that "[a]mounts that your employer pays you specifically—either as advances or reimbursements—for traveling or for other ordinary and necessary expenses incurred, or reasonably expected to be incurred, in your employer's business are not wages." 20 C.F.R. § 404.1045. The policy behind excluding such payments from the definition of "wages" is that such funds cannot be used for the recipient's support. Funds advanced to cover business expenses "are not income because you cannot use them as food, clothing, or shelter, or use them to obtain food, clothing, or shelter." 20 C.F.R. § 416.1103. Of course, Buchbinder's expenses in Argentina and Poland were not "business expenses" since they were not incurred in the course of any employment. They are, however, analogous to business expenses since the funds were advanced to Buchbinder with the understanding that they would be used for the benefit of Owen and the heirs of Fred Buchbinder. Thus, for the same reasons that business expenses are not considered wages, the $3,000 cannot be considered income or resources. The Secretary's final determination on this issue is reversed.

Since I conclude that, as a matter of law, Buchbinder did not have excess income and resources during the period in question, I need not reach the question of whether the Secretary waived recovery of an overpayment.

*Residing With Spouse*

■ The ALJ did not believe Buchbinder's testimony that he never lived with his wife. The ALJ relied on the only other evidence relevant to the issue of where Buchbinder was living during the period in question, the lease signed by Buchbinder, and found that Buchbinder lived with his spouse in Brooklyn. This conclusion is supported by substantial evidence.

---

**4.** The regulations do not explicitly exclude funds held in trust for the benefit of another. While the Secretary's authority to promulgate regulations in this area is unclear, *Cannuni on Behalf of Cannuni v. Schweiker,* 740 F.2d 260, 263 (3rd Cir.1984); *Rosenfeld v. Secretary of Health and Human Services,* 563 F.Supp. 1192, 1195 (E.D.N.Y.1983), I need not reach the question of the Secretary's regulatory authority since nothing in the regulations indicate that the listed exclusions are exclusive. Moreover, the Secretary does not oppose the contention that funds held by a trustee are not his resources. The Secretary merely argues that "plaintiff has not established that the $3,000 was held in valid trust." Government's Brief at 12.

The ALJ's finding that Buchbinder's testimony was "not credible" was probably based on the inconsistency between Buchbinder's claim that he was to ill to move to Brooklyn in April, 1985 and his testimony that he traveled to Poland around the same time. I find it plausible that a 76–year–old man with a nice room in an all-male apartment house in Manhattan, and no friends or relatives in Brooklyn, might choose to marry and yet refuse to move in with his wife in Brooklyn. Nevertheless, the credibility determination made by the ALJ, who had the opportunity to observe the demeanor of the witness, must be honored. *Troupe v. Heckler,* 618 F.Supp. 248, 253 (S.D.N.Y.1985) (Conner, J.) ("It is the function of the Secretary, and not a reviewing court, to pass on the credibility of the witnesses and to resolve material conflicts in the testimony.").

The only other evidence before the ALJ relating to Buchbinder's residence was a lease signed by Buchbinder identifying Marsel and Buchbinder as co-tenants. A reasonable mind would accept this evidence as adequate to support the conclusion that plaintiff resided with his spouse during the period covered by the lease. *See Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427.

The ALJ's finding that the Secretary did not waive the overpayment is also supported by substantial evidence. The Secretary is authorized to waive recovery of an overpayment where the SSI recipient shows that (1) he was "without fault" in causing the overpayment; and (2) recovery would defeat the purposes of Title XVI or would be against equity and good conscience or (because of the small amount involved) impede efficient or effective administration of Title XVI. 42 U.S.C. § 1383(b)(1)(B). The plaintiff bears the burden of establishing both requirements. *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1042 (2d Cir. 1984). Moreover, where the plaintiff fails to prove that he is "without fault," the court need not inquire as to whether the second prong is met. *Goldstein v. Harris,* 517 F.Supp. 1314, 1319 (S.D.N.Y.1981).

Although a finding of "fault" depends on "all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from.... [f]ailure to furnish information which the individual knew or should have known was material." 20 C.F.R. § 415.552. The regulations require SSI recipients to report any "change in living arrangements" or "marital status." 20 C.F.R. § 416.708. The ALJ, after considering "all of the circumstances," Administrative Record at 11, and observing that Buchbinder "received supplemental security income for a number of years and had been informed of his reporting responsibilities on numerous occasions," *id.* at 13, found that plaintiff should have reported his marriage. *Id.* I cannot say the ALJ's conclusion was unreasonable. The Secretary's final determination on this issue is affirmed.

## CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., is granted in part and denied in part. The Secretary's determination that plaintiff was not entitled to SSI benefits from February through December, 1984 is reversed. The Secretary's determination that from May through September, 1985, plaintiff received benefits as though he was living alone while he was living with his wife, and that the Secretary did not waive the overpayment, is affirmed.